464 A.2d 388

**COMMONWEALTH of Pennsylvania**

v.

**Antonio COLON, Appellant.**

Superior Court of Pennsylvania.

Submitted May 5, 1982.

Filed July 29, 1983.

414

Louis Sherman, Philadelphia, for appellant.

Jane Cutler Greenspan, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

416

Before SPAETH, ROWLEY and CIRILLO, JJ.

CIRILLO, Judge:

At 10:14 p.m. on April 10, 1977, Philadelphia Police responded to a silent alarm going off in a bar on North Second Street in Philadelphia. They found Antonio Colon and a man named Martinez hiding on the first-story roof of the bar near a place where the second-story wall of the bar had been broken in. The police found marked bills on Martinez which the owner of the bar later identified as money kept in the bar for use in the juke box. After a trial by stipulation on December 12, 1979, Judge Thomas A. White found Colon guilty of burglary and conspiracy. Colon's post-verdict motions were denied and he was sentenced to concurrent terms of three years' probation. Colon appeals, claiming that his right to a speedy trial was violated. Pa.R.Crim.P. 1100, 42 Pa.C.S.

–1–

■ At the outset, the Commonwealth urges us to quash Colon's appeal for failure to comply with the Rules of Appellate Procedure. Indeed, the brief prepared by appellant's counsel fails utterly to conform with the most basic rules governing brief-writing. Rule 2111(a), 42 Pa.C.S., provides:

*General rule.* The brief of the appellant ... shall consist of the following matters, separately and distinctly entitled and in the following order:

(1) Statement of jurisdiction.

(2) Order or other determination in question.

(3) Statement of the questions involved.

(4) Statement of the case.

(5) Summary of argument.

(6) Argument for appellant.

(7) A short conclusion stating the precise relief sought.

(8) The opinions and pleadings specified in Subdivisions (b) and (c) of this rule.

Rules 2114 through 2119 describe in detail the required content of each of the matters listed in Rule 2111(a). Appellant has violated each and every one of these rules. His brief consists of two sections, one labelled "Question," the other "Index/History of the Case." The "Question" is not a question at all, but a strange admixture of argument and fact. The "History of the Case" is hardly distinguishable in content from the "Question." Both sections contain misstatements and confusions of fact. Had we not availed ourselves of the Commonwealth's brief and the record of the post-verdict motions hearing in the trial court, we would be unable to determine what appellant's Rule 1100 argument is. The defects in appellant's brief are substantial; we have not hesitated to quash appeals on the basis of similarly defective briefs. *E.g., Commonwealth v. Taylor,* 306 Pa.Super. 1, 451 A.2d 1360 (1982); *Commonwealth v. Sanford,* 299 Pa.Super. 64, 445 A.2d 149 (1982); *Commonwealth v. Wyant,* 254 Pa.Super. 464, 386 A.2d 43 (1978). *See* Pa.R.A.P. 2101, 42 Pa.C.S. However, appellant's Rule 1100 argument was diligently presented and preserved at every stage of the trial proceedings. By referring to the transcript of the post-verdict motions hearing, we can formulate precisely the issues appellant attempts to pursue on appeal: he seeks to challenge the validity of two extensions granted to the Commonwealth under Pa.R.Crim.P. 1100(c). It would be unjust to quash his appeal on the grounds of appellate counsel's derelictions, and, in our discretion, we will decide the case on the merits. *See Commonwealth v. Jones,* 256 Pa.Super. 366, 389 A.2d 1167 (1978).

█ The procedural history of this case is long and tortuous. After arresting appellant, the police on April 11, 1977, filed a complaint charging him with burglary, theft, and conspiracy. Therefore, the Commonwealth had until October 10, 1977, to bring him to trial. Pa.R.Crim.P. 1100(a)(2); 1 Pa.C.S. § 1908.[1] Obviously, the trial date of December

---

1. Rule 1100(a)(2) provides: "Trial in a court case in which a written complaint is filed against the defendant after June 30, 1974 shall commence no later than one hundred eighty (180) days from the date

12, 1979, was far beyond the original Rule 1100 run date. The rule mandates that a defendant be discharged unless all periods of delay beyond the run date are accounted for either by an extension granted to the Commonwealth pursuant to Rule 1100(c), or by an exclusion of time under Rule 1100(d).[2] *Commonwealth v. Williams*, 299 Pa.Super. 226, 445 A.2d 537 (1982). The Commonwealth applied for its first extension in this case on August 1, 1978. Although the record is scanty on this point, it appears that appellant had made himself unavailable for much of the intervening time. At the hearing on the Commonwealth's first extension petition on April 11, 1979, the court excluded 607 days under Rule 1100(d). The court calculated an amended run

on which the complaint is filed." 1 Pa.C.S. § 1908 sets out the following method for computing the running of time periods:

When any period of time is referred to in any statute, such period of time in all cases ... shall be so computed as to exclude the first and include the last day of such period. Whenever the last day of any such period shall fall on Saturday or Sunday ... such day shall be omitted from the computation.

This statute applies to Rule 1100 computations. *Commonwealth v. Sanford*, 497 Pa. 442, 441 A.2d 1220 (1982). Excluding April 11, 1977, 180 days from the filing of the complaint was October 8, 1977, a Saturday. Omitting Saturday and Sunday, October 9, gives us an original Rule 1100 run date of October 10, 1977.

2. During the period relevant to this case, Rules 1100(c) and (d) provided:

(c) At any time prior to the expiration of the period for commencement of trial, the attorney for the Commonwealth may apply to the court for an order extending the time for commencement of trial. A copy of such application shall be served upon the defendant through his attorney, if any, and the defendant shall also have the right to be heard thereon. Such application shall be granted only if trial cannot be commenced within the prescribed period despite due diligence by the Commonwealth. Any order granting such application shall specify the date or period within which trial shall be commenced.

(d) In determining the period for commencement of trial, there shall be excluded therefrom such period of delay at any stage of the proceedings as results from:

(1) the unavailability of the defendant or his attorney;

(2) any continuance in excess of thirty (30) days granted at the request of the defendant or his attorney, provided that only the period beyond the thirtieth (30th) day shall be so excluded.

These sections were amended October 22, 1981, effective January 1, 1982.

date of June 6, 1979, and also granted an extension to that date. Eventually, appellant's case was scheduled· to be tried on June 5, 1979. When the case was.called that morning, however, neither appellant nor the complaining witness, each of whom had been duly notified of the trial date, was present in court. The court issued bench warrants. Appellant appeared late, and the warrant on him was withdrawn; the warrant on the complainant was executed, and he was brought in. However, by that time, appellant's case had been passed, and the court was unable to try him that day. On June 6, the Commonwealth again petitioned for an extension. At a hearing held on July 10, 1979, the court, pursuant to Rule 1100(c), granted the Commonwealth an extension to Monday, July 16, 1979. Up to this point, appellant challenges neither the propriety of the extensions granted to the Commonwealth nor the excludability of the 607 days for which the court found him unavailable.[3]

Trial was rescheduled for July 12, 1979. This time appellant did not appear for trial. He was in prison and was not brought down to court. The next day, the Commonwealth petitioned for a third extension, alleging that it could not bring appellant to trial before the run date despite its due diligence. On ·August 2, 1979, the court found that the Commonwealth had exercised due diligence, and granted the Commonwealth a third extension to September 13, 1979. Appellant's first contention on appeal is that the Commonwealth was not entitled to the August 2 extension, and that consequently he should have been discharged.

 A court may grant the Commonwealth an extension of time in which to commence trial if the Common-

---

**3.** Thus, what appears at first glance to be a monumental delay of over two and one-half years actually is largely uncontested by appellant. We may assume that the Commonwealth was diligent in its efforts to bring appellant to trial at least through June 6, 1979. *See Commonwealth v. Huertas,* 261 Pa.Super. 257, 396 A.2d 386 (1978); *Commonwealth v. Flores,* 247 Pa.Super. 140, 371 A.2d 1366 (1977). In reality, as will hereafter appear, the entire period of time in which appellant claims he should have been brought to trial, but was not, totals six days.

wealth cannot bring a defendant to trial within the prescribed period despite due diligence. *Commonwealth v. Sharp*, 287 Pa.Super. 314, 430 A.2d 302 (1981). The burden is on the Commonwealth to prove by a preponderance of the evidence that it has met the requirements of Rule 1100(c). *Id.* Where the Commonwealth, despite due diligence, cannot timely bring a defendant to trial because of judicial delay, the court properly may grant an extension. *Commonwealth v. Shelton*, 469 Pa. 8, 364 A.2d 694 (1976). At the extension hearing of August 2, the court took judicial notice of the docket entry of July 12 indicating that appellant had not been brought down from prison. The Commonwealth's attorney argued that he had requested a forthwith bringdown that day upon learning of appellant's incarceration. The court noted that there was nothing about the Commonwealth's request in the docket, but treated the fact that appellant had not been brought down as "court delay." The court then found due diligence on the part of the Commonwealth and extended the run date to September 13. Appellant contends to the contrary, that the fact he was not brought down to court for his trial demonstrates a *lack* of due diligence by the Commonwealth, entitling him to discharge. We disagree with appellant's conclusion.

Implicit in the trial court's ruling that "judicial delay" accounted for appellant's absence on July 12 is a finding that officers of the court, not the Commonwealth, bore the responsibility for securing appellant's presence at trial. This point was hotly contested at the post-verdict motions hearing, but the trial court never explicitly resolved the question. However, on the basis of additional facts which came to light at the hearing, we conclude that appellant himself was responsible for his absence on July 12, and that the Commonwealth would have been entitled to exclude time under Rule 1100(d), regardless who is charged with bringing defendants down from prison in Philadelphia.

As of March 21, 1979, appellant had been free on bail. When he appeared, late, for trial on June 5 (and the bench warrant on him was withdrawn), his "probation officer"

was in the courtroom. After failing to reach appellant's case, the court continued it to July 12. Appellant then was taken into custody on a "V.O.P. detainer." Neither the Commonwealth's nor the court's files on appellant reflected the fact that he had been arrested, and there is no indication anywhere in the record why a probation detainer was outstanding on him as of June 5. Obviously, though, appellant's arrest on the detainer had nothing to do with this case, for probation is a post-conviction, not a pre-trial, status. In any event, appellant remained in custody through July 12, his trial date.

 As a condition of being admitted to bail, a person obligates himself to "appear before the issuing authority or court at all times required until full and final disposition of the case." Pa.R.Crim.P. 4013(a). When a defendant who is on bail and who has notice of a scheduled court proceeding in his case fails to appear in court at the appointed time, he has violated the conditions of bail, and the Commonwealth is entitled to count any resulting period of delay as *excludable* time under Rule 1100(d)(1). *Commonwealth v. Cohen,* 481 Pa. 349, 392 A.2d 1327 (1978); *Commonwealth v. Bedsaul,* 298 Pa.Super. 174, 444 A.2d 717 (1982). Furthermore, the delay is excludable even without a showing by the Commonwealth that it has exercised due diligence to locate a defendant. As the Court said in *Cohen,*

> Where the defendant is on bail and has notice of his obligation to appear and fails to do so, a concept of due diligence is misplaced in a speedy trial analysis. To rule otherwise would permit a defendant who intentionally absented himself from a scheduled court hearing to have the charges against him dismissed if the Commonwealth's efforts to locate him did not measure up to a court's standard of due diligence. Such a result is obviously absurd.

*Id.,* 481 Pa. at 355–56, 392 A.2d at 1331.

Appellant's obligation to appear for trial on July 12 did not change when he was incarcerated. In *Commonwealth v. Williams,* 299 Pa.Super. 226, 445 A.2d 537 (1982), we held

that a defendant on bail has an obligation under Rule 4013(c)[4] to notify the Commonwealth of his *change of address* upon being incarcerated. In *Williams,* the defendant, who was on bail, failed to appear for his preliminary hearing in Delaware County on September 4, 1979. On January 17, 1980, he was imprisoned in Philadelphia County on unrelated charges. The Delaware County authorities did not learn of the defendant's whereabouts until March 31, 1980, and did not obtain custody of him until April 29, 1980. We excluded from our Rule 1100 computation the entire period of time between the defendant's failure to appear and his return to Delaware County. We held that the Commonwealth was not required to demonstrate due diligence to locate the defendant in the Philadelphia jail, since the defendant had violated bail by not informing the appropriate authorities he was there.

■ The *Williams* analysis does not change for this case simply because appellant was incarcerated in the same county where the charges originated. We have recognized that authorities in a given county often detain defendants without notifying the county's prosecuting officers; and that in such circumstances the prosecutors may be unaware of a defendant's whereabouts despite due diligence. *Commonwealth v. McDermott,* 280 Pa.Super. 535, 421 A.2d 851 (1980); *Commonwealth v. Jones,* 256 Pa.Super. 366, 389 A.2d 1167 (1978). *Cf. Commonwealth v. Hinton,* 269 Pa. Super. 43, 409 A.2d 54 (1979) (defendant found unavailable for period of 173 days, 165 of which he was in jail in same county where charges were pending).[5]

**4.** Rule 4013(c) mandates that the conditions of a bail bond shall provide that the appellant will "give written notice to the issuing authority, the clerk of courts, the district attorney, and court bail agency or other designated court bail officer, of any change of address within forty-eight (48) hours of the date of such change."

**5.** *And see* Justice Nix's Opinion in Support of Remand in *Commonwealth v. Patrick,* 487 Pa. 16, 24, 407 A.2d 382, 386 (1979): "To conclude that the Commonwealth's unawareness of appellant's apprehension resulted from its lack of due diligence ignores the realistic complexities of a justice system operating in a populous county."

We were presented with facts remarkably similar to those of the instant case in *Commonwealth v. Clark*, 248 Pa.Super. 184, 186–87, 374 A.2d 1380, 1381 (1977), in which Judge Spaeth wrote:

> Appellant's trial was originally set for November 12, 1974, well within the 270 day period. The prosecutor and appellant's counsel appeared in court that day but appellant did not. Appellant's absence was unexplained, and when the prosecutor suggested that appellant was a fugitive, the court agreed and declared him a fugitive. In fact, however, appellant was in jail in the same county, under [unrelated] charges.... Appellant had received notice of his November 12 trial date but had made no effort to inform his counsel, the prosecutor, or the warden regarding his required appearance in court for trial. Although there was some evidence that someone in the District Attorney's office knew that appellant had been rearrested and was in jail, evidently the prosecutor in charge of the present case did not.

(Footnotes omitted). Judge Spaeth remonstrated that "a defendant may [not] hide himself away in some crevice of the criminal justice system," and that such conduct would support a finding of unavailability under Rule 1100(d)(1). In *Clark* we remanded for a finding on whether the Commonwealth had exercised due diligence to ascertain the defendant's whereabouts. Such a remand is unnecessary in the instant case.[6] It appears from the record before us that probation officers had appellant detained on June 5 for violating his probation on an unrelated case; there is no evidence indicating that anyone alerted the district attorney to appellant's detention, and we have no basis upon which to speculate that someone might have. Since, for all the prosecutors knew, appellant was free on bail, and since appellant violated two bail conditions by failing to inform the district attorney of his incarceration and failing to appear for trial on July 12, we hold that appellant was

6. Moreover, *Commonwealth v. Akridge*, 492 Pa. 90, 422 A.2d 487 (1980), precludes us from remanding to afford the Commonwealth a "second bite" at proving its due diligence under Rule 1100.

unavailable within the meaning of rule 1100(d)(1). *Commonwealth v. Cohen, supra; Commonwealth v. Williams, supra; Commonwealth v. Minoske,* 295 Pa.Super. 192, 441 A.2d 414 (1982).

The problem facing the Commonwealth in this case was what to do once it became clear appellant would not be tried on July 12. Rule 1100(d)(1) "specifically excludes from the 'run time' 'such period of delay at any stage of the proceedings *as results from:* (1) the unavailability of the defendant or his attorney.' . . . It is obvious that in many cases the defendant, by his unavailability, can occasion a delay which is much greater than the actual time of his unavailability." *Commonwealth v. Perry,* 296 Pa.Super. 359, 362, 442 A.2d 808, 810 (1982). In *Perry,* where the defendant had neglected to appear on time for his trial and the case had been passed and rescheduled for twenty-two days later, we held that the entire twenty-two day delay could be excluded under Rule 1100(d)(1). Similarly, in *Commonwealth v. Robinson,* 498 Pa. 379, 446 A.2d 895 (1982), the Supreme Court attributed to the defendant a period of delay exceeding the time actually consumed by defense-requested continuances. The amended Rule 1100 run date on Robinson's case was April 24, 1975. On April 23, Robinson waived the running of the Rule until May 23, 1975. On May 23, the trial court disposed of Robinson's pre-trial motions. Robinson then requested and received a continuance to June 30, 1975, also waiving his Rule 1100 rights to that day. On June 30, the court put Robinson's case on "backup" status behind two other cases. Robinson's case finally proceeded to voir dire on July 16. Meanwhile, on July 15, Robinson moved to dismiss the charges pursuant to Rule 1100(f),[7] on the grounds that his waiver had been valid only until June 30, and that the Rule had since run. The trial court denied the

7. "At any time before trial, the defendant or his attorney may apply to the court for an order dismissing the charges with prejudice on the ground that this Rule has been violated. A copy of such application shall be served upon the attorney for the Commonwealth, who shall also have the right to be heard thereon. Any order granting such application shall dismiss the charges with prejudice and discharge the defendant."

motion to dismiss; on appeal, the Superior Court reversed, finding a Rule 1100 violation, but the Supreme Court reversed, and reinstated the trial court's order. Justice Roberts, writing for a unanimous Court with one justice concurring in result, said:

By making this case turn on the issue of whether appellee waived his Rule 1100 rights during the sixteen-day period of delay between the expiration of the second defense-requested continuance and the commencement of voir dire, both the post-verdict court and the Superior Court assumed that, absent a valid waiver of Rule 1100 rights by appellee, Rule 1100 does not allocate the responsibility for the sixteen-day delay to appellee. At the time of trial, section (d) of Rule 1100 provided:

"In determining the period for commencement of trial, there shall be excluded therefrom such period of delay at any stage of the proceedings as results from:

(1) the unavailability of the defendant or his attorney;

(2) any continuance in excess of thirty (30) days granted at the request of the defendant or his attorney, provided that only the period beyond the thirtieth (30th) day shall be so excluded."

In interpreting subdivision (1), this Court has made it clear that the period of excludable days is not necessarily measured by the length of time that a defendant was "unavailable." Instead, once it is determined that the defendant was unavailable, the critical inquiry is whether actual delay resulted from the defendant's unavailability. "If the 'unavailability' results in an actual delay in the proceedings, that delay is automatically excluded." *Commonwealth v. Millhouse*, 470 Pa. 512, 517, 368 A.2d 1273, 1276 (1977). So, too, under subdivision (2) it must be concluded that although a defense-requested continuance which exceeds thirty days serves as a triggering device for exclusion, the number of days to be excluded is not governed solely by the length of the continuance. Rather, as under subdivision (1), the number of days to be

excluded is that "period of delay ... as results from" the continuance. *Cf. Commonwealth v. Wade*, 475 Pa. 399, 405–406, 380 A.2d 782, 785 (1977) (excludable delay caused by open-ended continuance measured from date of continuance request to end of delay). Here, therefore, the critical question is whether the sixteen-day period of delay "result[ed] from" a defense-requested continuance.

On this record, it appears that on May 23, 1975, upon the close of pre-trial motions, this matter would have proceeded to trial if appellee had not requested and been granted a second continuance. That continuance necessitated the placement of the matter on "backup" status behind two cases. Consistent with the court's business, those two cases were disposed of without undue delay, in sixteen days, and the trial of this case commenced immediately thereafter. The sixteen-day period during which the matter was on "backup" status must, therefore, be attributed to appellee.

498 Pa. at 386, 446 A.2d at 898–99.

Thus, the Commonwealth in the instant case would have been entitled to exclude any period of delay resulting from appellant's failure to attend trial on July 12—but at that time, there was no way for the Commonwealth to gauge the extent of the delay that would result. The Commonwealth solved its problem by filing, on July 13, a petition for an extension under Rule 1100(c). Appellant now would have us hold that the Commonwealth failed to prove its entitlement to the extension because it did not demonstrate due diligence in attempting to get the case into a courtroom on July 13 or July 16, the two working days remaining before the run date. We decline to adopt such an illogical interpretation of the Rule's requirements.

The issue at a Rule 1100(c) hearing is whether the Commonwealth has in fact been duly diligent in attempting to bring a defendant to trial. The due diligence standard demands that the Commonwealth make reasonable efforts, not that every conceivable effort be made. *Commonwealth v. Polsky*, 493 Pa. 402, 426 A.2d 610 (1981); *Com-*

*monwealth v. Banner,* 295 Pa.Super. 87, 440 A.2d 1389 (1982). Additionally, we have recognized that defense-caused delays may obstruct diligent efforts by the Commonwealth to try an accused, and may therefore justify an extension under Rule 1100(c). *Commonwealth v. Reiss,* 301 Pa.Super. 96, 447 A.2d 259 (1982); *Commonwealth v. Mancuso,* 247 Pa.Super. 245, 372 A.2d 444 (1977). Here, the Commonwealth had a trial date; on that date the Commonwealth appeared with its witnesses, ready to try appellant. All the various forces necessary to try a criminal case had been mustered—all but one, the defendant, who failed to appear for his own trial, in violation of his bail bond and through no fault of the Commonwealth's. By narrowly focussing on the Commonwealth's diligence in the two days remaining before the run date, we would ignore "the realistic complexities of a justice system operating in a populous county." [8] In Philadelphia, where this case arose, it would have been tantamount to a physical impossibility to have appellant's case rescheduled in those two days. An anonymous Philadelphia trial judge brought the point home colorfully in the following words: "I'll analogize it to a baseball game. You get up, take your three swings. You don't get up again until eight other guys bat, and that's the way it is in Philadelphia." *Quoted in Commonwealth v. Delpiano,* 290 Pa.Super. 510, 513–14 n. 3, 434 A.2d 1260, 1262 n. 3 (1981). Appellant had his three swings in this case, and he should not be allowed two more. A similar situation occurred in *Commonwealth v. Jackson,* 269 Pa. Super. 249, 409 A.2d 873 (1979), in which the defense counsel's continuance had left the Commonwealth with one day in which to begin the defendant's trial before the run date. The Commonwealth requested an extension, which the trial court granted solely on the basis of the following exchange at the extension hearing:

> MR. GOODMAN: Your honor, if I could point out that Mr. Fitzgerald [appellant's counsel] filed his petition for a continuance or a pass on October 27, and for a period

8. *See* note 5 *supra.*

> between October 27 and November 14. The 180th day in this case was November 15, 1977. According to Mr. Fitzgerald's calculation, that would give the Commonwealth exactly one day to get the case into a courtroom.
> THE COURT: Yes, which in our county is totally out of the question.

269 Pa.Super. at 254, 409 A.2d at 875.

Recognizing the dilemma posed by delays which leave the Commonwealth hard up against an impending run date, we have refused to hold the Commonwealth strictly accountable for every day between the failed trial date and the run date. We have focussed instead on the Commonwealth's diligence in securing a timely trial date in the first place, and in readying itself to proceed on that date. Thus, in *Commonwealth v. Tann*, 298 Pa.Super. 505, 444 A.2d 1297 (1982), trial had been scheduled for April 7, 1981, four working days before the run date on April 13. When the prosecutor phoned the complaining witness the night before the trial to remind him of his obligation to be in court the next day, the witness's mother told the prosecutor that the witness could not attend the trial due to a mid-term high school examination the next day. On April 10, 1981, the Commonwealth petitioned for an extension under Rule 1100(c). We reversed the lower court orders denying the petition and dismissing the defendant. We held that, on the facts given, the Commonwealth's due diligence had been established. Similarly, in *Commonwealth v. Sharp*, 287 Pa.Super. 314, 430 A.2d 302 (1981), trial had been scheduled for June 6, 1979, with a Rule 1100 run date of June 7. Despite diligent efforts by the Commonwealth to have the complaining witness appear for trial, he elected instead to attend his aunt's funeral in Maryland that day. The Commonwealth that same day filed its Rule 1100(c) petition, which was granted. After the trial court granted the defendant's motion in arrest of judgment for a violation of Rule 1100, we reversed, holding that the Commonwealth's due diligence had been established. In neither of these cases did we mention the fact that the Commonwealth's

proof at the hearings had been silent regarding the interval between the trial date and the run date. *Accord, Commonwealth v. Gilliam,* 302 Pa.Super. 50, 448 A.2d 89 (1982). *See also Commonwealth v. Cimaszewski,* 261 Pa.Super. 39, 395 A.2d 931 (1978) (on scheduled trial date, case not reached due to court backlog; thereafter case "remained on the assignment board" for fifty-three days until run date; held, Commonwealth's due diligence established).

In *Commonwealth v. Mayfield,* 469 Pa. 214, 220, 364 A.2d 1345, 1348 (1976), in which the Supreme Court set out the framework for obtaining a Rule 1100(c) extension, they said, "The rule recognizes that 'due diligence' is the most that should be demanded from the prosecutor and that if despite such efforts, *he cannot prepare for trial within the prescribed period,* an extension is permissible." (Emphasis added). In the present case, neither the Commonwealth's nor the court's unreadiness to proceed to trial was at issue, since both were prepared to try the case on July 12, 1979. It was the appellant himself who prevented trial from commencing that day. As Justice Nix said in his Opinion in Support of Affirmance in *Commonwealth v. Brightwell,* 486 Pa. 401, 407, 406 A.2d 503, 505 (1979), "we know of no case wherein the right to a speedy trial has been violated when the cause for delay has been properly attributable to the defendant. On the contrary, where the defendant has deliberately caused the delay, he has been prevented from taking advantage of his own wrong." Correspondingly,

[t]he administrative mandate of Rule 1100 certainly was not designed to insulate the criminally accused from good faith prosecution delayed through no fault of the Commonwealth....

So long as there has been no misconduct on the part of the Commonwealth in an effort to evade the fundamental speedy trial rights of an accused, Rule 1100 must be construed in a manner consistent with society's right to punish and deter crime. In considering matters such as that now before us, courts must carefully factor into the

ultimate equation not only the prerogatives of the individual accused, but the collective right of the community to vigorous law enforcement as well. Strained and illogical judicial construction adds nothing to our search for justice, but only serves to expand the already bloated arsenal of the unscrupulous criminal determined to manipulate the system.

*Commonwealth v. Genovese,* 493 Pa. 65, 69, 72, 425 A.2d 367, 370, 371 (1981). We have consistently followed these principles in deciding Rule 1100(c) cases. *E.g., Commonwealth v. Gilliam, supra; Commonwealth v. Harrison,* 293 Pa.Super. 211, 438 A.2d 612 (1981); *Commonwealth v. Brown,* 252 Pa.Super. 365, 381 A.2d 961 (1977); *Commonwealth v. Brown,* 251 Pa.Super. 179, 380 A.2d 436 (1977); *Commonwealth v. Kollock,* 246 Pa.Super. 16, 369 A.2d 787 (1977). For these reasons, we hold that the extension granted to the Commonwealth on August 2, 1979, was proper.

■ As we said, the extension ran until September 13, 1979. On the scheduled trial date of September 11, the public defender informed the court that appellant was absent participating in a drug program in Newark, New Jersey. The court issued a bench warrant to insure that appellant would not be absent again. On September 12, 1979, the Commonwealth filed its fourth extension petition, which the court granted after a hearing on October 19, 1979. The extension ran until October 29, 1979, with trial scheduled for October 25.[9] In the meantime, appellant was still in New Jersey in the drug program, but the ROR warrant service unit,[10] instead of serving the warrant on appellant there, had mailed notice to his Pennsylvania address. Appellant did not appear in court on October 25. The next day the Commonwealth petitioned for its fifth

9. Appellant does not challenge the Commonwealth's entitlement to the fourth extension.

10. The ROR warrant service unit is a division of the court administrator's office charged with serving bench warrants on defendants who are on bail and fail to appear in court.

extension, which the court granted after a hearing on November 30, 1979. Appellant contends that the fifth extension was improper.[11]

We are not privy to the operations of the court's warrant service unit, or to the difficulties that confronted its attempt to serve a warrant out of state. But it is clear that the unit's failure to serve the court's warrant does not reflect adversely on the *Commonwealth's* exercise of due diligence in attempting to try appellant on October 25, as appellant would have us hold. Just as the Commonwealth is not responsible for bringing defendants who are free on bail into court for trials, neither is it responsible for serving the court's warrants. Since the court had ordered its own officials to see to it that appellant finally would attend his own trial, the Commonwealth's reliance on the efforts of the court officials cannot be faulted. In any event, the public defender's office was aware of the October 25 trial date; it would offend our sense of justice to hold the Commonwealth accountable for retrieving appellant from New Jersey when his own counsel apparently made no effort to notify him of his court obligations. *Cf. Commonwealth v. Bundridge,* 268 Pa.Super. 1, 407 A.2d 406 (1979) (fact that defense counsel had notice of trial date countered appellant's assertion that he could not be considered unavailable because he did not have personal notice). The Commonwealth did what it reasonably should have done to try appellant before the run date, and it was entitled to the fifth extension.

The monumental delay between the filing of the complaint against appellant and his eventual trial can now be seen in a different light. Two years of the delay remains somewhat a mystery, except we do know that appellant caused it. Even after emerging from his unexplained latency, appellant continued to dilate the case with long bouts of unavailability. We are reminded of the words of President Judge G. Thomas Gates of Lebanon County, speaking for

11. Appellant was tried within the run time as amended by the fifth extension order.

this Court in *Commonwealth v. McCulley*, 270 Pa.Super. 115, 120 n. 7, 410 A.2d 1276, 1278 n. 7:

It was the appellant who caused all the delay and now complains that his rights to a speedy trial have been denied. It is rather difficult to understand that a man is entitled to a dismissal of serious criminal charges on the grounds that his precious right to a speedy trial was denied to him when the facts demonstrate unequivocally that he probably did not want a trial at all, much less a speedy one, and that the Commonwealth was at all times prepared to proceed and afford him his precious right, but was frustrated by the defendant's conduct in either being unavailable or asking for a continuance in order to secure private counsel. Sometimes at law we overlook the fact that we should interpret the law so that it makes at least the impression of containing a little common sense.

In our common-sense interpretation of Rule 1100, appellant was not entitled to be discharged.

Accordingly, we affirm.

SPAETH, J., files a dissenting opinion.

SPAETH, Judge, dissenting:

I believe that appellant should be discharged because the Commonwealth failed to exercise due diligence to bring him to trial within the period specified by Pa.R.Crim.P. 1100.

–1–

In addressing the Commonwealth's argument that the appeal should be quashed for noncompliance with Pa.R. App.P. 2111(a), the majority states, "Had we not availed ourselves of the Commonwealth's brief and the record of the post-verdict motions hearing in the trial court, we would be unable to determine what appellant's Rule 1100 argument is." At 417. I disagree. It is true that, instead of using the heading, "Statement of Questions Involved," Pa. R.A.P. 2111(a)(3), 2116, appellant's counsel uses, "Question." Instead of dividing his argument into "Statement of the Case," "Summary of Argument," and "Argument,"

Pa.R.A.P. 2111(a)(4), (5), and (6), counsel has a single section, entitled "Index," with, immediately beneath, "History of the Case." There follow a statement of the facts and appellant's argument, with appropriate citations. But, appellant's argument, though not elegantly stated, is easily grasped. Indeed, the Commonwealth's assertion, Brief for Commonwealth at 2, that it "is put to a serious disadvantage in determining what precise issues are before this Court," is belied by its brief, which fully responds to appellant's argument.

I therefore find no merit in the Commonwealth's argument that the appeal should be quashed, and I concur in the majority's conclusion to address appellant's argument. At 390.

–2–

In addressing appellant's argument, the majority relies, in part, on the transcript of the post-verdict motions hearing. At 420. I believe that this reliance is improper in light of the Supreme Court's decision in *Commonwealth v. Akridge*, 492 Pa. 90, 422 A.2d 487 (1980) (*per curiam*). There the Court held that the Commonwealth's entitlement to an extension must be determined on the basis of the record made at the extension hearing, and that if the Commonwealth has failed to establish its right at the extension hearing, it will not be permitted a "second bite."

I am cognizant of the suggestion in *Commonwealth v. Carr*, 292 Pa.Super. 137, 436 A.2d 1189 (1981) (LIPEZ, J., dissenting), that the Commonwealth may take a second bite if the bite is at the post-verdict motion stage instead of—as in *Akridge*—on remand. This suggestion, however, was *dictum;* the issue in *Carr* was whether *Akridge* should be applied retrospectively, and the holding was that it should be applied only prospectively. In *Carr* that holding resulted in an affirmance, for there, when the lower court permitted a second bite, *Akridge* had not been decided. Here, in contrast, the post-verdict motion hearing was held four months after *Akridge* had been decided.

To be sure, if *dictum* is found persuasive, it may in a later case be adopted as a holding. But I do not find the *dictum* in *Carr* persuasive, for the reasoning offered in its support is inconsistent with, and therefore its potential authoritativeness is precluded by, the reasoning of the Supreme Court in *Akridge.*

In *Carr* the majority of the court reasoned that "the entire record," by which it meant the record including the record of the post-verdict motion hearing, "demonstrates compliance with Rule 1100," 292 Pa.Super. at 140 n. 1, 436 A.2d at 1191 n. 1, and that "[*Akridge* ] does not require appellate courts to turn a blind eye to a record establishing compliance with Rule 1100 and to discharge a properly convicted defendant despite actual compliance with Rule 1100 as established by the record certified for review," 292 Pa.Super. at 140, 436 A.2d at 1191. The difficulty with this reasoning is that it begs the question: *If* there has been "compliance with Rule 1100," then neither *Akridge* nor any other case requires "discharge [of] a properly convicted defendant." The question, however, is whether there *has* been compliance with Rule 1100. *Akridge* dispositively answers this question by holding that there has *not* been such compliance when the Commonwealth fails to prove *at the extension hearing* that it is entitled to an extension.

The holding in *Akridge* was in no sense novel—and the Supreme Court emphasized the lack of novelty by announcing its decision in the form of a three paragraph *per curiam* order. It was early established that under Rule 1100, a motion for an extension may be granted *only* upon the basis of a record that supports findings showing that the extension is warranted. Thus in *Commonwealth v. Mayfield,* 469 Pa. 214, 364 A.2d 1345 (1976), the Court held that "[h]enceforth, the trial court may grant an extension under Rule 1100(c) *only upon a record showing* . . . [etc.]" *Id.,* 469 Pa. at 222, 364 A.2d at 1349–50 (emphasis added). Consequently, an extension granted *without* a record having been made at the extension hearing cannot be characterized as having been granted "in compliance with" the rule.

*Commonwealth v. Ehredt*, 485 Pa. 191, 401 A.2d 358 (1979). Making the record *later* cannot cure the failure to comply with the rule. And this is equally true whether the record is made later at the post-verdict motion stage or later after remand. For the terms of the rule and the cases implementing it preclude any *nunc pro tunc* procedure, or, to use the Supreme Court's phrase in *Akridge*, any "second bite."

The *dictum* in *Carr* suggesting that nevertheless a "second bite" is permissible, if it is taken at the post-verdict motion stage instead of on remand, is therefore inconsistent with the terms of the rule and settled authority.

The *dictum* is also inconsistent with settled policy. The policy underlying Rule 1100 and the cases implementing it is to ensure the speedy disposition of criminal cases. Thereby protection is extended both to the defendant's constitutional right to a speedy trial, *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), and the "overriding interest" of the public, *Commonwealth v. Mayfield*, *supra*, 469 Pa. at 221, 364 A.2d at 1349 (citing ABA Standards Relating to Speedy Trial, § 1.1 (commentary) (Approved Draft, 1972), where it is said that "[f]rom the point of view of the public, a speedy trial is necessary to preserve the means of proving the charge, to maximize the deterrent effect of prosecution and conviction, and to avoid, in some cases, an extended period of pretrial freedom by the defendant during which time he may flee, commit other crimes, or intimidate witnesses".) This policy is implemented by requiring that the Commonwealth prove, before the trial, at the extension hearing, that it is entitled to an extension—in other words, that it is consistent with both the defendant's and the public's interests to try the case not then but later. To permit the Commonwealth to prove after the trial that it was entitled to an extension—to give it a "second bite"—would be inconsistent with and would frustrate both the defendant's and the public's interests. Trials would be conducted under a cloud of doubt as to whether they were legal; no one could know whether they were

legal, for no record and no findings would exist showing that they were. Disorder would be engendered in the courts. Instead of the propriety of an extension being resolved in the pre-trial motions court, thereby enabling cases to be scheduled in a rational manner, resolution would be transferred to the post-verdict motions court, which would have to hold a second, unnecessary, hearing. Frequently, this hearing would occur many months after the trial itself had been held. (Here, as a specific example, the trial was held on December 12, 1979, and the post-verdict motions hearing was held on October 27, 1980.) Should the post-verdict court conclude that the extension should not have been granted, the result would be not only a greatly delayed disposition of the case, but the expense and waste arising from having conducted the trial, all to the public's great disadvantage. Plainly, the only fair, orderly, and economical way to proceed is to decide *before* trial whether an extension is warranted. That is the way specified by Rule 1100(c), and it is the way insisted upon by *Akridge* and many other cases, such as *Commonwealth v. Ehredt, supra*, and the cases there cited. Therefore, we should address appellant's argument solely on the basis of the record developed at the extension hearings held on August 2 and November 30, 1979.

–3–

(a)

The first challenged extension was granted after a hearing held on August 2, 1979. Trial had been scheduled for July 12, 1979, but appellant had not appeared for trial. The run date then in effect was July 16, 1979. The majority justifies its conclusion that the August 2 extension was properly granted on "the basis of additional facts which came to light at [appellant's post-verdict motions] hearing ...." At 420. For the reasons just stated, I do not believe that the record developed at that hearing should be considered in addressing appellant's argument. A review of the transcript of the August 2 extension hearing compels

the conclusion that the extension should not have been granted.

To be entitled to an extension, the Commonwealth must prove that it has attempted diligently to bring the defendant to trial within the prescribed time period, and that obstacles imposed by the administration of court business made it impossible to do so. *Commonwealth v. Mayfield, supra.* The standard of due diligence requires the Commonwealth to take affirmative steps to secure the defendant's presence at trial. *See Commonwealth v. Ashford,* 277 Pa.Super. 400, 419 A.2d 1206 (1980) (error to grant motion for extension where record devoid of evidence demonstrating efforts to serve warrant or to notify him by telephone or mail). The Commonwealth must prove these facts by a preponderance of the evidence. *Commonwealth v. Ehredt, supra; Commonwealth v. Antonuccio,* 257 Pa. Super. 535, 390 A.2d 1366 (1978).

At the extension hearing, the Commonwealth neither alleged the existence of nor offered evidence tending to establish that it had attempted prior to July 12, 1979, in any way, to locate appellant or to arrange for his appearance for trial on that date. Appellant's attorney contended at the hearing that the District Attorney had been notified in advance of the trial date that appellant was incarcerated, and that the Commonwealth therefore "should have ordered a bring down prior to the date of the trial." N.T. 8/2/79 at 2. The assistant district attorney did not deny notification but only asserted that upon noting appellant's absence from the courtroom on July 12, a forthwith bring-down was requested but that the court refused to order it. *Id.* No evidence was presented in support of this assertion, and the hearing transcript casts doubt on it, for the hearing judge stated that "[t]here is nothing about that here ...," and he indicated that the only notation on the court's records was "7–12, the defendant was not brought down." *Id.*

I cannot conclude on the basis of this record that the Commonwealth made any attempt to secure appellant's presence at trial on July 12, either before the trial date or

upon noting appellant's absence from the courtroom. The mere fact that appellant was incarcerated did not excuse the Commonwealth from the obligation to take affirmative steps to secure his presence. *Cf. Commonwealth v. Smith,* 274 Pa.Super. 229, 418 A.2d 380 (1980) (Incarceration is not by itself sufficient to render defendant unavailable for trial for purposes of Rule 1100(d)); *Commonwealth v. Bass,* 260 Pa.Super. 62, 393 A.2d 1012 (1978) (same); *Commonwealth v. Kovacs,* 250 Pa.Super. 66, 378 A.2d 455 (1977) (same). The conclusion that the August 2 extension was improperly granted is, therefore, inescapable. This conclusion alone is sufficient to warrant appellant's discharge.

(b)

The majority holds that the November 30, 1979, extension was also properly granted because the Commonwealth justifiably relied on the ROR Warrant Service Unit to notify appellant of the October 25 trial date. At 431. But the record of the November 30 extension hearing does not establish that the Commonwealth had arranged in advance of the trial date for the ROR Warrant Service Unit to notify appellant at the drug program in New Jersey of the trial date, much less that it relied on such an arrangement. Indeed, the Commonwealth introduced no evidence at the hearing of any efforts to notify appellant at the drug program, despite the fact that the Commonwealth knew more than a month in advance of the trial date that appellant was enrolled in the drug program. This knowledge is disclosed by the fact that appellant's participation in the program had already been invoked by the Commonwealth to justify a continuance of appellant's trial from September 11 to October 25. (*Id.*) (Commonwealth's Petition for Extension, filed September 12, 1979).

Despite the absence of any indication on the record that the Commonwealth attempted to secure appellant's presence at trial on October 25, the majority finds that the Commonwealth acted with due diligence, because "it would offend our sense of justice to hold the Commonwealth accountable for retrieving appellant from New Jersey when

his own counsel apparently made no effort to notify him of his court obligation." At 431. Whether or not it comports with the majority's "sense of justice," the fact that the Defender Association may have known that appellant's trial had been scheduled for October 25 in no way undermines the fact that as the rule is now written, an extension may not be granted except upon a showing by the Commonwealth that it attempted with due diligence to obtain the defendant's presence at trial within the prescribed period. *Commonwealth v. Ehredt, supra; Commonwealth v. Antonuccio, supra.* The November 30 extension was not predicated upon such a showing. It therefore should not have been granted.

Appellant should be discharged.