549 A.2d 566

**COMMONWEALTH of Pennsylvania**

**v.**

**James RIFFERT, Appellant.**

**COMMONWEALTH of Pennsylvania**

**v.**

**Kathleen WIBLE, Appellant.**

Superior Court of Pennsylvania.

Argued April 6, 1988.

Filed Sept. 2, 1988.

Reargument Denied Oct. 26, 1988.

1

2

4

John P. Lawler, Stroudsburg, for appellant in No. 2934.

George W. Westervelt, Jr., Stroudsburg, for appellant in No. 2939.

Jane Roach, Assistant District Attorney, Allentown, for Com., appellee.

Before WIEAND, McEWEN and BECK, JJ.

WIEAND, Judge:

James Riffert and Kathleen Wible were tried by jury and were found guilty on two counts of conspiracy to possess a controlled substance and two counts of conspiracy to possess a controlled substance with intent to deliver.[1] Following the denial of post-trial motions, Riffert was sentenced to serve two consecutive terms of imprisonment of four to eight years and ordered to pay a $5,000.00 fine; and Wible was sentenced to serve two concurrent terms of imprisonment of three to six years and ordered to pay a $1,000.00 fine. Both Riffert and Wible have appealed from their judgments of sentence, and those appeals have been consolidated for appellate review. We will consider seriatim the numerous issues raised by appellants Riffert[2] and Wible.[3]

1. Co-defendants, Joseph Inadi and Richard Reeves, were also tried with Riffert and Wible. Inadi was convicted of two counts of conspiracy to possess a controlled substance and two counts of conspiracy to possess a controlled substance with intent to deliver. Reeves was convicted of one count of the same offenses.

2. Riffert raises the following four issues for our review:
    1. Does the failure to provide the Appellant with a preliminary hearing until thirty-five days after his preliminary arraignment require his discharge?
    2. Did the Commonwealth's failure to file any timely Petition to Extend the period in which to bring the Appellant to trial more than one hundred and eighty (180) days after the initiation of criminal proceedings require the discharge of the Appellant?
    3. Did the Commonwealth lack probable cause to obtain its initial search warrants which formed the basis for the installation of pen registers subsequently approved by the Honorable Ronald E. Vican the product of prior illegally obtained evidence?
    4. Did the Trial Court err in admitting wiretap tape number one in that it had no probative value to the charges for which the Appellants were tried and that its admission was solely for the purpose of prejudicing the jury against the Appellants?

3. Wible argues the following eleven issues:

6

The convictions of Riffert, Wible and their codefendants were the result of an extensive investigation by Pennsylvania State Police into drug trafficking in the Pocono Mountains area of northeastern Pennsylvania. The factual scenario underlying their convictions was summarized by the trial court as follows.

In late 1984, the Pennsylvania State Police received information from confidential informants that a criminal conspiracy involving a major drug ring dealing in large quantities of methamphetamine was in operation in the Pocono Mountains, Monroe County area. The police initially applied for and received search warrants of telephone records of various individuals, namely, Patty Moore, Margaret Carpenter, Kathleen Wible and Susan Kitchener. Finding similarities in numbers called, the police requested a pen register be ordered to record outgoing numbers dialed on these telephones. By Court

1. Did the trial court err in finding the evidence sufficient to sustain convictions of conspiracy?

2. Is probable cause to obtain court ordered wiretaps established by inconclusive and vague police affidavits?

3. Are court ordered wiretaps which are the product of prior illegally obtained evidence proper?

4. Does the Commonwealth minimize its interception of telephone conversations by failing to discontinue interception of telephone conversations dealing with personal, noncriminal matters?

5. Is a tape recording of a co-defendant's telephone conversation with his ex-wife containing profane and lewd statements and which discusses unrelated crimes properly admitted into evidence?

6. Does the Commonwealth's failure to bring a defendant to trial within one hundred and eighty days of the date the criminal complaint was filed require that the charges be dismissed with prejudice?

7. Does a court err in permitting the Commonwealth to qualify a state police corporal as an "expert" in drug investigations and drug terminology?

8. Does a court err in permitting the jury to take two pounds of methamphetamine into the jury deliberation room?

9. Does a court err in refusing to read a defendant's points for charge which apply to the facts of the case?

10. Does a court err in consolidating a defendant's trial with that of co-defendants when consolidation is clearly prejudicial and without reasonable basis?

11. Is a sentence of a minimum three years to a maximum of six years, plus a fine of one thousand ($1,000) dollars excessive in view of the minimal involvement, if any, of the defendant in the crimes?

Orders dated February 15 and 27, 1985, the pen registers were placed into operation.

The Commonwealth used the information gathered from the pen register to apply to the Superior Court for a wiretap on co-defendant Wible's and Riffert's two telephones. The wiretap was issued and conducted in March of 1985. One hundred twenty-eight coded messages were intercepted and recorded.

From these phone conversations, the police surmised that Riffert and co-defendant Wible were in the process of consummating a sale of one pound of methamphetamine with co-defendant Inadi on March 15, 1985. Following up on their suspicions, Officers Stern and Schaeffer observed Wible and Inadi meet at the designated location, but did not witness the actual exchange.

A similar incident on March 23/24, 1985 led to Defendant's arrest. On this occasion, a purchase from Inadi was negotiated over the phone, however, Defendant Reeves was to pick up the methamphetamine. Several brief telephone conversations between Wible and Inadi and Wible and Reeves finally brought Inadi and Reeves together at the George Washington Motor Lodge. Observing the transaction, the police promptly arrested Reeves and Inadi. Wible and Riffert were arrested soon afterward.

Appellants argue initially that the Commonwealth violated Pa.R.Crim.P. 1100 by failing to bring them to trial within 180 days after the date on which criminal complaints had been filed against them. The specific basis for appellants' Rule 1100 claim is that the Commonwealth failed to file a timely petition to extend the time for trial. By the time such a petition was filed, appellants contend, the 180 day period under Rule 1100 had expired. This, appellants argue, requires that they be discharged. The trial court, however, found that time was excludable pursuant to Rule 1100(d)(3), and, that when such time was excluded, the Commonwealth's petition to extend the time for trial was timely.

8

Criminal complaints were filed against appellants on March 18, 1985. The Commonwealth did not file its petition to extend the time for trial until October 28, 1985, 224 days after the date on which the criminal complaints had been filed. On June 26, 1985, however, the trial court had issued an order mandating that the omnibus pre-trial motions of all defendants be filed no later than August 5, 1985. Riffert filed his omnibus pre-trial motion on August 12, 1985; Wible did not file her motion until February 5, 1986. Numerous discovery motions and additional pre-trial motions were also filed by the defendants. Because appellants and their co-defendants were to be tried together and in order that all proceedings could move ahead simultaneously, the trial court determined that the omnibus pre-trial motions of all defendants would be decided at the same time. Hearings were held and, on July 2, 1986, the trial court filed an opinion and accompanying order which denied the many suppression issues which had been raised in the omnibus pre-trial motions of appellants and their co-defendants. Trial commenced five days later on July 7, 1986.

During all periods of time relevant to this case, Rule 1100 mandated that a defendant be discharged unless all periods of delay beyond 180 days were accounted for either by an extension of time granted to the Commonwealth or by an exclusion of time pursuant to Rule 1100(d).[4] *Commonwealth v. Colon*, 317 Pa.Super. 412, 418, 464 A.2d 388, 391 (1983). See also: *Commonwealth v. Williams*, 299 Pa.Super. 226, 445 A.2d 537 (1982). In determining whether a petition to extend the time for trial has been filed timely, however, all periods of time which are properly excludable under Rule 1100(d) must be subtracted. *Commonwealth v. Shelton*, 469 Pa. 8, 15, 364 A.2d 694, 697 (1976). See also: *Commonwealth v. Bomboy*, 357 Pa.Super. 265, 515 A.2d 969 (1986); *Commonwealth v. Casper*, 327 Pa.Super. 362, 475 A.2d 840 (1984). Time is excluded from the computation of the 180 day period under Rule 1100 for delays which

4. Rule 1100 was amended on December 31, 1987. However, our analysis in this appeal is based on the version of the rule as it existed at the time of the trial court's ruling on appellants' motions to dismiss.

are caused by the unavailability of a defendant. *Commonwealth v. Armstead*, 359 Pa.Super. 88, 91, 518 A.2d 579, 581 (1986); *Commonwealth v. Colon, supra*, 317 Pa.Super. at 425, 464 A.2d at 395. Also excluded, according to the decided cases, is the time intervening between a defendant's filing of pre-trial motions and the trial court's disposing of such motions. See: *Commonwealth v. Mason*, 358 Pa.Super. 562, 518 A.2d 282 (1986); *Commonwealth v. Bond*, 350 Pa.Super. 341, 504 A.2d 869 (1986) (en banc) (Spaeth, P.J. concurring); *Id.* (Wieand, J. concurring). See also: *Commonwealth v. Fuchs*, 372 Pa.Super. 499, 539 A.2d 1307 (1988); *Commonwealth v. Wills*, 370 Pa.Super. 173, 536 A.2d 351 (1987). The rationale for excluding such time has been explained as follows:

> The critical point, as I see it, is that in instituting her constitutional challenge, appellant initiated foreseeable delay for which the Commonwealth was not responsible. The period extending from the date of appellant's motion to the date of the trial court's order denying the motion should be excluded from the 180–day period. To permit the period to run while the court deliberated on the motion would be to permit appellant to wield her right to a speedy trial in an unjust and uncontemplated manner.

*Commonwealth v. Bond, supra*, 350 Pa.Super. at 358, 504 A.2d at 878 (Spaeth, P.J. concurring). See also: *Id.*, 350 Pa. Superior Ct. at 363, 504 A.2d at 881 (Wieand, J. concurring) ("appellant sought to delay the trial in order to obtain a ruling on the constitutional issue and thereby, in a practical sense, obtained a postponement or continuance of the trial").

In the instant case, the trial court correctly determined that the time period between August 12, 1985, the date on which appellant Riffert filed his omnibus pre-trial motion, and October 28, 1985, the date on which the Commonwealth filed its petition to extend the time for trial, was excludable in computing the 180 day period.[5] When this period of seventy-seven (77) days is subtracted from the computation

5. Indeed, we might well exclude all time after August 5, 1985, when the pre-trial motions should have been filed.

of the 180 day period, it is apparent that the Commonwealth's petition to extend the time for trial was filed on the 147th day following the filing of the criminal complaint against Riffert. A motion thus filed was timely. Because Riffert's omnibus pre-trial motion had raised challenges to the Commonwealth's evidence against him, his trial could not commence until the motion was disposed of by the trial court. Riffert thus was unavailable to be tried while his omnibus motion was pending. Implicitly, he had obtained a postponement or continuance of his trial during such time.

■ The trial court had determined that Riffert and Wible, together with two co-defendants, were to be tried together in a consolidated trial. Therefore, the trial against Wible also could not commence until all pre-trial matters had been decided. Wible aggravated this delay by her own tardiness. Although the trial court had set August 5, 1985 as the deadline for filing omnibus pre-trial motions, Wible's pre-trial motion was not filed until February 5, 1986. Wible's tardy compliance with the trial court's order, therefore, contributed to the Commonwealth's inability to commence trial. In effect, Wible was also unavailable for trial between August 5, 1985, when her pre-trial motions should have been filed, and October 28, 1985, when the Commonwealth requested an extension of time within which to commence trial. When this period of eighty-four (84) days is excluded, the Commonwealth's petition was also filed timely with respect to the charges against Wible. We conclude, therefore, that Rule 1100 was not violated.

■ Riffert contends also that he is entitled to be discharged because his preliminary hearing was not held within ten days following his preliminary arraignment as required by Pa.R.Crim.P. 140(d). This issue, however, was not raised prior to or at the time of the preliminary hearing and, therefore, was waived. Pa.R.Crim.P. 150 provides that

[a] defendant shall not be discharged nor shall a case be dismissed because of a defect in the form or content of a complaint, summons, or warrant, or a defect in the procedures of this Chapter, unless the defendant raises the

defect before the conclusion of the preliminary hearing and the defect is prejudicial to the rights of the defendant.

A failure to hold a preliminary hearing within the time constraints of Pa.R.Crim.P. 140(d) is a defect which is governed by the remedial provisions of Rule 150. See: *Commonwealth v. Revtai*, 516 Pa. 53, 532 A.2d 1 (1987). Riffert's preliminary hearing was held on April 29, 1985, but he did not object thereto and did not raise the Rule 140(d) issue until he filed an amended, omnibus pre-trial motion on February 10, 1986. By failing to raise the issue prior to the conclusion of the preliminary hearing, Riffert waived this alleged procedural defect and could not thereafter raise it. Cf. *Commonwealth v. Schimelfenig*, 361 Pa.Super. 325, 522 A.2d 605 (1987) (defendants who did not raise Commonwealth's failure to comply with Pa.R.Crim.P. 130(d) prior to conclusion of preliminary hearing waived issue).

■ Appellants argue that the Commonwealth did not have probable cause to obtain the court order authorizing the wiretapping of telephones located at their residence. We find no merit in this contention. The applicable law governing probable cause to support an order authorizing a telephone intercept was set forth in *Commonwealth v. Doty*, 345 Pa.Super. 374, 498 A.2d 870 (1985), *cert. denied*, 479 U.S. 853, 107 S.Ct. 185, 93 L.Ed.2d 119 (1986) as follows:

An application for an order authorizing interceptions of telephone communications must contain, inter alia, the identity of the person, if known, committing the offense under investigation and whose communications are to be intercepted. It must also contain details about particular offenses, the type of communications to be intercepted, and must show that there is probable cause to believe that pertinent communications will be transmitted on the facility under surveillance. 18 Pa.C.S. § 5709(3). The standard for determining whether probable cause existed is the same as that used to determine cause for search warrants. See: *United States v. Talbert*, 706 F.2d 464,

467 (4th Cir.1983); *United States v. Falcone,* 505 F.2d 478, 481 (3d Cir.1974), *cert. denied,* 420 U.S. 955, 95 S.Ct. 1338, 43 L.Ed.2d 432 (1975). The facts contained in the affidavit for a search warrant must be such that an independent, issuing authority, exercising reasonable caution, can conclude that the items sought are connected with criminal activity and that they will be found in the place to be searched. *Commonwealth v. Council,* 491 Pa. 434, 443, 421 A.2d 623, 627 (1980); *Commonwealth v. Ryan,* 300 Pa.Super. 156, 167, 446 A.2d 277, 283 (1982). Similarly, in an application for a wiretap, the Commonwealth must establish probable cause to believe that (1) a person has or is about to commit one of the offenses enumerated in the statute, (2) that communications relating to that offense will be transmitted, and (3) that such communications will be intercepted on the facility under surveillance. See: *United States v. Armocida, supra,* 515 F.2d [29] at 35 [ (3d Cir.1975) ].

*Id.,* 345 Pa.Superior Ct. at 397–398, 498 A.2d at 881–882.

Accompanying the Commonwealth's application for wiretaps of telephones located at the Riffert–Wible residence was an affidavit supplied by Pennsylvania State Trooper Thomas C. Bachman. In addressing appellants' suppression motions, the suppression court made the following observations concerning the Bachman affidavit:

The affidavit discloses that the Defendants Riffert, Wible and Inadi, are engaged in a conspiracy with Donahue, Isenberg, Schloder and other known drug dealers, to sell and distribute methamphetamine in Philadelphia and Monroe County and extending into Luzerne and Wyoming Counties. It shows that the Defendants have previously been arrested and convicted on drug charges. It shows that Riffert and Wible have been the source of supply of methamphetamine to convicted drug dealers. It shows they are armed and threaten injury to any one who may inform the police of their criminal activities. It shows that the telephone is the common means by which the Defendants carry out their conspiracy to violate the drug

laws. Confidential informants revealed to the police that they have personally witnessed extensive criminal activity on the part of the Defendants [which] is continuous in character and not limited to a few isolated instances. That the residences of Defendants and associates are in an isolated area making access thereto for police surveillance both difficult and dangerous.

The contents of the affidavit show that since 1982, the police have carried on extensive investigation of the criminal activity of James Riffert and Kathleen Wible, that this activity was continuous to the date of arrest. They had evidence of such activity from confidential informants and prior wiretapping authorized by Judge Tamilia. They had supporting corroboration of the activity of the Defendants in the sale and distribution of methamphetamine from state police and municipal police.

Based upon this affidavit, both Judge Tamilia of the Superior Court and the trial court found that probable cause existed for the authorization of wiretaps in the instant case. We have also reviewed carefully the affidavit of Trooper Bachman and are persuaded that prior determinations of the existence of probable cause were correct.

■ Prior to the court ordered use of pen registers and wiretaps, police obtained a search warrant authorizing them to examine the long distance telephone records of the telephone company pertaining to telephones at the Riffert–Wible residence. Appellants contend that the affidavit of probable cause supporting the warrant was deficient because the reliability of information given by informants was not established. As a result thereof, they argue, all subsequent court orders authorizing pen registers and wiretaps were derived from the use of illegally obtained evidence. For this reason, appellants assert, all evidence obtained through the use of pen registers and wiretaps should have been suppressed.

In the first place, it is questionable whether appellants can have any expectation of privacy with respect to the business records of the telephone company. These are

records which are used by the telephone company in doing business, and if it elects to disclose those records, it is questionable whether its customers can complain that their rights to be free of unreasonable searches have been violated. We need not decide that issue, however, in this appeal.

Even if we assume, as appellants contend, that a search warrant based upon probable cause was necessary for an examination of the telephone company's records and that the affidavit in the instant case was deficient, it does not follow that all subsequently obtained evidence was illegally obtained and subject to suppression. In *Commonwealth v. Shaw*, 476 Pa. 543, 383 A.2d 496 (1978), the Supreme Court said, "[i]n deciding whether a warrant issued in part upon information obtained through exploitation of illegal police conduct is valid, we must consider whether, absent the information obtained through the illegal activity, probable cause existed to issue the warrant." *Id.*, 476 Pa. at 555, 383 A.2d at 502. See also: *Commonwealth v. Gullett*, 459 Pa. 431, 329 A.2d 513 (1974); *Commonwealth v. Knowles*, 459 Pa. 70, 327 A.2d 19 (1974); *Commonwealth v. Tucker*, 252 Pa.Super. 594, 384 A.2d 938 (1978); *Commonwealth v. Cosby*, 234 Pa.Super. 1, 335 A.2d 531 (1975). The applications for the pen registers and wiretaps in this case, when viewed without the information obtained in the search of appellants' telephone records, were based on competent information, the reliability of which was established, and which was independently sufficient to establish probable cause for the subsequent court orders. The evidence obtained by use of the pen registers and wiretaps, therefore, was not subject to suppression on grounds that a search of the telephone company's records pertaining to telephones used by Riffert and Wible had been illegally conducted.

■ All orders which authorize a wiretap must direct that "such interception begin and terminate as soon as practicable and be conducted in such a manner as to minimize or eliminate the interception of ... communication[s] not otherwise subject to interception under this chapter...." 18 Pa.C.S. § 5712(b). Wible contends that the Commonwealth

failed to minimize the interception of communications over the telephones in the Riffert–Wible residence. This, Wible argues further, requires that all evidence obtained through the wiretaps be suppressed.

The minimization requirements of the Wiretapping and Electronic Surveillance Control Act, 18 Pa.C.S. § 5701 et seq., were discussed by this Court in *Commonwealth v. Doty, supra,* in the following manner:

Minimization of the interception of communications not subject to seizure is a crucial requirement of a lawful wiretap. *Scott v. United States,* [436 U.S. 128, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978)], *supra; Berger v. New York,* 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967). Without minimization, surveillance of telephone conversations amounts to a general search and an unreasonable intrusion into a citizen's privacy. The purpose of minimization is to reduce the scope of an intrusion while at the same time allowing legitimate law enforcement aims to be pursued. An overly restrictive interpretation of the minimization requirement will make it impossible to use a telephone intercept as an effective method for investigating activities of organized crime, such as drug trafficking, gambling, political corruption, etc., which invariably are carried on in secret. See: *United States v. Cox,* 567 F.2d 930 (10th Cir.1977), *cert. denied,* 435 U.S. 927, 98 S.Ct. 1496, 55 L.Ed.2d 522 (1978). This is why minimization must be a question of what is reasonable and practical under the circumstances of each case. *Scott v. United States, supra,* 436 U.S., at 140, 98 S.Ct. at 1724, 56 L.Ed.2d at 179; *United States v. Armocida, supra,* 515 F.2d at 42. The Commonwealth has the burden of proving at a suppression hearing that the manner in which the wiretap was conducted did not impose a greater invasion of privacy than was reasonably necessary under the circumstances. See: *United States v. Armocida, supra* at 43. See also: *Commonwealth v. Ryan,* 296 Pa.Super. 222, 226–228, 442 A.2d 739, 741–742 (1982). Circumstances to be considered include, but are not limit-

ed to, the nature of the investigation, the length of calls, the percentage of pertinent calls, whether calls are repeatedly between the same parties, whether the contents of calls are ambiguous, whether coded or guarded language is used, and whether patterns develop during the surveillance. *Scott v. United States, supra.*

*Id.*, 345 Pa.Super. at 399, 498 A.2d at 882–883.

At trial, Corporal Thomas P. Baggott of the Pennsylvania State Police, the supervisor of the wiretapping operation, outlined the minimization procedures which had been followed. He testified as follows:

Q. And, were there proceedings involved to minimize phone investigations?

A. Yes, there were.

Q. Do you want to explain what minimize means to the Jury?

A. The court directs us when we conduct a wiretap that we must minimize the interception, that is, if we're on a given phone, the court gives us permission to listen to those conversations to try to find criminal intent that we can use to continue our investigation.

If the conversation appears to us that the people are not subjects of the investigation that are using the phone or if they are subjects and there is indication that it's not going to be a criminal conversation, we must do what's call[ed] minimize, that is we push a button that records on the DNR—that means we push the button that electronically shuts off the recorder and headsets so we do not listen to a telephone conversation that is not drug-related, so that if you have a situation where you have two persons living in a house and you believe only one is involved in drugs, the second person gets on that telephone, you must minimize and not listen to that call.

Periodically, you can go back on line, push the button and again record it on the DNR and you listen and you make sure that person has not changed where you have a wife hand the phone to her husband and also to make

sure the people talking, that it is still a general conversation and not criminal conversation.

All these are recorded electronically so the courts can examine that we have not listened to conversations that we're not allowed to listen to.

Q. Were these procedures observed throughout the wiretapping?

A. Yes, sir, the monitors were required to minimize and the supervisor's prime job was to see that minimization was carried out.

Q. And, did someone come from out of the state police to supervise the overall operation including posting orders and that sort of thing?

A. Yes.

Q. Who was that?

A. The the District Attorney of that county, Mr. Marsh.

With respect to the Commonwealth's efforts to minimize the interceptions, the suppression court made the following findings:

The affidavit of probable cause reveals a wide spread conspiracy to distribute methamphetamine in large quantities in the Philadelphia area, the Pocono region extending into Luzerne and Wyoming Counties. The scope of criminal activity was extensive. It involved the criminal activities of a substantial number of people such as James Riffert, Kathleen Wible, Joseph Donahue, Kerry Schloder, Jerry Smith, Darlene Howell Isenberg, Martin Moore and others. It shows extensive criminal activity in the sale and distribution of methamphetamine over a substantial area of the Pocono region by people who have been arrested, convicted and sentenced for drug violations.

The pen register records show an abnormal use of the telephones. Many calls between the same persons, all known drug dealers, in a single day. These records show clearly that the telephones were not for normal use primarily but the conduits between the drug dealers to

accomplish their objectives to sell illegal drugs, particularly methamphetamine.

The police in terminating the wiretapping within the time period fixed by the Court and not seeking an extension of said time period, both satisfied the requirement of the Court as well as the statutory minimization provisions.

The record shows that the police made a conscious effort to minimize the intrusion into the privacy of the Defendants' telephone conversations. They intercepted only pertinent calls, calls which identified the conspirators, informed them of the nature of the criminal activity planned and the time and place it was to occur. They did not intercept general calls. A supervisor was present at the listening post at all times and any grey area was discussed by telephone with the District Attorney.

The District Attorney approved the minimization plan, monitored it personally by repeated visits to the listening post. The District Attorney also approved the names and identification of the police officers used in monitoring the telephone calls. Only pertinent calls were intercepted and transcribed.

The evidence shows that the District Attorney properly supervised the wiretapping. It further shows that the police avoided any unreasonable intrusion into the privacy of the Defendants' telephone conversations.

After a careful review of the record, we are satisfied that the suppression court's determination that the Commonwealth had adequately minimized its interception of telephone conversations from the Riffert–Wible residence was fully supported. Wible's averments to the contrary are without merit.

■ The Commonwealth introduced at trial the contents of several conversations which it had intercepted as part of its wiretap operation. Appellants objected to the introduction of a conversation between Riffert and his ex-wife, Darlene Riffert, on the grounds that it was irrelevant—it pertained in part to custody arrangements for their son.

They also argue that any probative value was outweighed by its prejudicial impact because the conversation contained foul language and sexual innuendo. Another part of the same conversation, however, pertained to Riffert's having taken over the "Greenridge Corporation." Corporal Baggott, testifying as an expert, said that the "Greenridge Corporation" had been a reference to the drug trade in the Pocono Mountains. This conversation, the trial court concluded, was relevant as evidence of Riffert's involvement in drug trafficking.

In reviewing appellants' challenge to the admission of this intercepted conversation, we are guided by the following principles:

> The admission and exclusion of evidence is a matter vested within the trial court's discretion. "An abuse of that discretion may be found if it appears that a trial judge admitted irrelevant evidence that was prejudicial to the accused or evidence the probative value of which was outweighed by its prejudicial impact or its tendency to suggest decision on an improper basis." *Commonwealth v. Shain*, 324 Pa.Super. 456, 462, 471 A.2d 1246, 1248–49 (1984).
>
> . . . .
>
> "Evidence is relevant if it tends to make more or less probable the existence of some fact material to the case, it tends to establish facts in issue or when it in some degree advances the inquiry and thus has probative value." *Commonwealth v. Shain, supra*, 324 Pa.Superior Ct. at 462–463, at 471 A.2d at 1249.

*Commonwealth v. Delligatti*, 371 Pa.Super. 315, 331–332, 538 A.2d 34, 42 (1988). We will not substitute our judgment in this case for the trial court's determination that the challenged conversation was relevant as evidence of Riffert's involvement in drug trafficking in the Pocono Mountains. We reject appellants' assertion that the use of foul language rendered otherwise relevant evidence inadmissible because of a possibly prejudicial effect.

■ Wible challenges the trial court's ruling which permitted Corporal Baggott to testify as an expert to interpret coded messages which were intercepted. Not only was the testimony improper as a usurpation of the jury's function, she argues, but Corporal Baggott was not qualified to express an opinion regarding the intended content of such messages.

We find no merit in Wible's contention that Corporal Baggott's opinion testimony usurped the function of the jury. In *United States v. Dawson*, 556 F.Supp. 418 (E.D. Pa.1982), *affirmed*, 727 F.2d 1101 (3d Cir.1984), the United States District Court for the Eastern District of Pennsylvania said that "expert testimony is readily admissible to interpret and explain the use of code words and the meaning of certain language used in drug trafficking." *Id.* at 423. See also: *United States v. Smith*, 519 F.2d 516 (9th Cir.1975); *United States v. Fletcher*, 616 F.Supp. 16 (E.D. Pa.1985). In *United States v. Cirillo*, 499 F.2d 872 (2d Cir.), *cert. denied*, 419 U.S. 1056, 95 S.Ct. 638, 42 L.Ed.2d 653 (1974), moreover, the Second Circuit unequivocally rejected the argument which Wible attempts to assert in this Court. Specifically, the *Cirillo* court found that where a police officer, who had been qualified to testify as an expert, testified that, in his opinion, certain terms had been used as disguised references to narcotics, his testimony did not invade the province of the jury. *Id.* at 881. See also: *United States v. Borrone–Iglar*, 468 F.2d 419, 421 (2d Cir.1972), *cert. denied*, 410 U.S. 927, 93 S.Ct. 1360, 35 L.Ed.2d 588 (1973). So, too, in the instant case, expert testimony was admissible to decode drug language intercepted by the wiretaps. The trial court specifically instructed the jury that it was its responsibility to assess the credibility of Corporal Baggott's testimony. His testimony did not usurp the jury's fact finding function and was properly received.

■ We also find no abuse of the trial court's discretion in its determination that Corporal Baggott had been qualified to give such testimony.

To qualify as an expert witness, a witness need only have a "reasonable pretension to specialized knowledge," on a subject for which expert testimony is admissible. *Commonwealth v. Washington*, 235 Pa.Super. 339, 340 A.2d 896 (1975). An expert's pretension to specialized knowledge may be based upon practical, occupational, or other experiential training; the expert need not have gained expertise through academic training. *Commonwealth v. Ellis*, 354 Pa.Super. 11, 510 A.2d 1253 (1986); *Commonwealth v. Daniels*, 280 Pa.Super. 278, 421 A.2d 721 (1980). The determination of whether a witness is qualified to offer an expert opinion on a particular subject is a matter addressed to the sound discretion of the trial court, and its discretion will not be reversed absent a clear abuse of discretion. *Commonwealth v. Samuels*, 354 Pa.Super. 128, 511 A.2d 221 (1986); *Commonwealth v. Ellis, supra; Commonwealth v. Bulling*, 331 Pa.Super. 84, 480 A.2d 254 (1984).

*Commonwealth v. Pearsall*, 368 Pa.Super. 327, 332, 534 A.2d 106, 109 (1987).

In response to Wible's post-trial motions, the trial court determined that Corporal Baggott had been properly qualified as an expert. The trial court reasoned as follows:

Officer Baggott was qualified as a professional drug investigator involved in the aspects of dealings, selling, and buying, and also involved in deciphering coded language. Officer Baggott is a twenty-year veteran of the Pennsylvania State Police and served on the narcotics task force for the past eight years. In addition to normal drug training, Officer Baggott is specially trained as a full-time narcotics investigator. He is a class A certified electronic surveillance officer. As a part of his training, Officer Baggott is familiar with slang and street names of various drugs. While engaged in undercover investigations, he has become involved in coded drug language, and has been engaged in thousands of coded conversations with drug dealers. Although he has never had special training in coded language, Officer Baggott has

been able to decode approximately 20 different non-consentual [sic] wiretap drug conversations. Based on these credentials, the Court accepted Officer Baggott as an expert in decoded wiretapped drug conversations.

We find no abuse of discretion in the trial court's determination that Baggott was qualified to express an opinion regarding the coded terminology found in the intercepted telephone conversations between Wible and others known to be involved in illegal drug trafficking.

■ Wible also contends that the trial court erred when it allowed two pounds of methamphetamine to be taken by the jury into the deliberating room. The methamphetamine had been seized by police at the time when Reeves and Inadi were arrested while engaged in a drug transaction.

Decisions as to what exhibits may be taken out of by the jury are within the sound discretion of the trial court and will not be reversed absent an abuse of that discretion. *Commonwealth v. Sparks*, 351 Pa.Super. 320, 327–328, 505 A.2d 1002, 1006 (1986); *Commonwealth v. Lybrand*, 272 Pa.Super. 475, 484, 416 A.2d 555, 560 (1979); *Commonwealth v. Merbah*, 270 Pa.Super. 190, 196, 411 A.2d 244, 247 (1979). See also: Pa.R.Crim.P. 1114. To establish an abuse of discretion, appellant must show that the trial court disregarded or misapplied the law or that " 'the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record....' " *Commonwealth v. Jackson*, 336 Pa.Super. 609, 627, 486 A.2d 431, 441 (1984).

*Commonwealth v. Thomas*, 372 Pa.Super. 349, 363, 539 A.2d 829, 836–837 (1988).

In the instant case, Wible has been unable to show that she was prejudiced in any way by this exhibit. The evidence at trial showed that appellant Wible, via telephone, had coordinated the meeting between Reeves and Inadi for the purchase of the methamphetamine. Thus, the drugs were directly linked to Wible and properly admitted against her at trial. Wible does not suggest otherwise. Under

these circumstances, we hold that it was not an abuse of discretion for the trial court to allow the drugs to go out with the jury during its deliberations. See: *United States v. Gordy,* 425 F.Supp. 208, 212 (E.D.Pa.), *affirmed,* 559 F.2d 1209 (3d Cir.1977) (trial court did not abuse its discretion by allowing heroin, which defendant allegedly sold and delivered, to go out with the jury).

The last of Wible's arguments which we will discuss [6] is that the trial court erred by consolidating her trial with that of her co-defendants, Riffert, Inadi and Reeves. The decision whether to try co-defendants jointly or separately is committed to the sound discretion of the trial court, and that decision "will not be disturbed on appeal absent a manifest abuse of discretion or a showing of substantial prejudice and clear injustice to the accused." *Commonwealth v. Thomas,* 346 Pa.Super. 11, 19, 498 A.2d 1345, 1348 (1985). See also: *Commonwealth v. Gordon,* 329 Pa.Super. 42, 477 A.2d 1342 (1984); *Commonwealth v. Gelormo,* 327 Pa.Super. 219, 475 A.2d 765 (1984). "A joint trial of co-defendants is 'advisable when the crimes charged grew out of the same acts and much of the same evidence is necessary or applicable to [all] defendants.'" *Commonwealth v. Thomas, supra,* 346 Pa.Super. at 19, 498 A.2d at 1349, quoting *Commonwealth v. Morales,* 508 Pa. 51, 61, 494 A.2d 367, 372 (1985). Wible has not demonstrated that the trial court abused its discretion in consolidating her trial

---

**6.** Wible's remaining contentions are wholly lacking in merit. The evidence introduced at trial was clearly sufficient to prove beyond a reasonable doubt that a conspiracy existed and that Wible had participated in that conspiracy.

There is in the trial court's instructions to the jury no error which requires the granting of a new trial. The jury was fully and accurately instructed on the applicable law, and appellant was not prejudiced by the trial court's divergence from the precise language which she had requested. See: *Commonwealth v. Neely,* 372 Pa.Super. 519, 539 A.2d 1317 (1988).

Wible has not preserved for our review the claim that her sentence is excessive. She has failed to comply with Pa.R.A.P. 2119(f) and, as such, we are precluded from further reviewing her challenge to the discretionary aspects of sentencing. See: *Commonwealth v. Tuladziecki,* 513 Pa. 508, 522 A.2d 17 (1987); *Commonwealth v. Krum,* 367 Pa.Super. 511, 533 A.2d 134 (1987).

with that of her co-defendants. The four defendants were charged with the same crimes arising from the same series of events. Much of the trial evidence, particularly the wiretapped conversations, was relevant and admissible against all four defendants. The trial court did not abuse its discretion when it ordered that all defendants be tried together.

Having found no merit in any of the appellants' several contentions, we affirm the judgments of sentence entered against them.

AFFIRMED.

BECK, J., concurs in the result.