586 A.2d 957

COMMONWEALTH of Pennsylvania

v.

**Robert SMITH, Appellant.**

Superior Court of Pennsylvania.

Argued May 23, 1990.

Filed Feb. 8, 1991.

258

Robert T. Panowicz, Wilkes–Barre, for appellant.

Karen Tomaine, Asst. Dist. Atty., Scranton, for Com., appellee.

Before OLSZEWSKI, MONTEMURO and FORD ELLIOTT, JJ.

MONTEMURO, Judge:

Following a trial by jury, appellant Robert Smith was convicted of three counts of corruption of a minor, one count of indecent exposure, two counts of indecent assault, and one count of open lewdness. Appellant's timely post-trial motions were denied, and appellant was sentenced to a total term of imprisonment of three years minimum to six years maximum. Appellant brings this appeal from the judgment of sentence. On appeal, appellant claims that (1) the trial court erred in failing to dismiss the case under Pennsylvania Rule of Criminal Procedure 1100(a)(2); (2) the trial court erred in permitting Commonwealth witnesses to

testify as to hearsay statements made by the minor victim; (3) the trial court erred in allowing a social worker to testify as an expert in the field of child abuse, and permitting the witness to offer his opinion on whether appellant had sexually abused the victim; (4) the trial court erred in failing to charge the jury regarding the scrutiny of the minor child's testimony; (5) the verdict was against the weight and sufficiency of the evidence; (6) the trial court erred in refusing appellant's motion for judgment of acquittal on the basis that the criminal information did not correlate with the facts. Because we find that the trial court erred in admitting the out-of-court statements of the minor victim, we reverse.

The instant convictions arise out of incidents which occurred between appellant and his granddaughter, S.L., during the summer of 1985. When S.L.'s mother (mother), noticed a change in S.L.'s attitude toward appellant and a decline in the child's academic performance, mother took S.L. to Children and Youth Services, where Mr. Ken Racowski, a social worker, interviewed the child. On the basis of his interview with S.L., Mr. Racowski concluded that the child had been molested by appellant and referred the case to the police. The instant charges were then brought.

Appellant challenges the trial court's denial of his motion to dismiss on the basis of a Pa.R.Crim.P. 1100 violation. The version of Rule 1100 which was in effect at the time of appellant's arrest provided:

**Rule 1100. Prompt Trial**

(a)(2) Trial in a court case in which a written complaint is filed against the defendant after June 30, 1974 shall commence no later than one hundred eighty (180) days from the date on which the complaint is filed.

Pa.R.Crim.P. 1100.[1] The complaint was filed against appellant on April 23, 1987; thus, the case should have been tried

1. The amended Rule 1100, effective December 31, 1987, requires that the trial be commenced within 365 days of the date of filing of the complaint against the defendant, where the defendant is out on bail. *See* Pa.R.Crim.P. 1100(a)(3).

by October 20, 1987. The case was not called for trial until August 1, 1988.

On October 20, 1987, the Commonwealth filed a motion for extension of the time for commencement of trial, pursuant to Rule 1100(c)(1), alleging excludable delay due to appellant's omnibus pretrial motion. On November 6, 1987, the trial court entered an order extending the trial date to January 22, 1988. In the order, the court noted that the Commonwealth produced evidence establishing service of the motion for extension of time, and that appellant failed to answer the motion or appear for the hearing on the motion.

On January 22, 1988, the Commonwealth filed another motion for extension of time, alleging that the defendant's various pretrial motions caused considerable delay. The motion requested an extension of time until April 22, 1988. The court entered an order on January 22, 1988, ordering appellant to show cause why the motion should not be granted and scheduling a hearing on the motion for February 17, 1988. The court entered an order on February 17, 1988, extending the trial date to April 22, 1988, and noting that defendant had failed to answer the Commonwealth's motion to extend the time for trial or otherwise indicate a desire to oppose the extension. On the next day, February 18, 1988, however, another order was entered, indicating that defendant had appeared to answer the Commonwealth's motion for extension, but nevertheless granting the "Commonwealth's Motion for Extension of Time filed on January 22, 1988." The order did not specify a new date for commencing trial.

During the pretrial period, appellant filed numerous requests and motions. On May 15, 1987, appellant filed a request for Bill of Particulars. On May 22, 1987, appellant filed a request for discovery. On June 8, 1987, appellant filed an omnibus pretrial motion, including a motion to quash the information, a motion to compel a psychiatric exam, and a motion for a pretrial conference. On July 14, 1987, appellant requested a continuance of the omnibus

hearing. On July 17, 1987, appellant filed a brief in support of the omnibus pretrial motion. On September 2, 1987, the omnibus hearing was held. On September 9, 1987, appellant filed a second brief in support of his omnibus pretrial motion. On December 7, 1987 the trial court entered an order denying appellant's motion to quash the information, motion to compel a psychiatric exam and a portion of appellant's discovery requests. The court also ordered that the records from the Children and Youth Services concerning the child be made available for *in camera* review. On January 15, 1988, after reviewing the Children and Youth Services Records, the court entered an order scheduling a hearing on appellant's motion for production of the records. On February 5, 1988, the court ordered that the records be made available to the district attorney pursuant to Pa.R. Crim.P. 305(B)(1) and (2). At a hearing in March, it was revealed that appellant in fact had the requested documents in his possession. Thus, months of delay were incurred due to appellant's motion for discovery of evidence which had been in his possession the entire time.

On March 11, 1988, appellant filed a motion to dismiss the case pursuant to Rule 1100(f); the version of Rule 1100(f) in effect at that time permitted a defendant, at any time before trial, to apply to the court for dismissal of the charges on the ground that Rule 1100 had been violated. In his motion to dismiss, appellant alleged that the Commonwealth did not serve him or his attorney with the October 20, 1987 motion, and that the motion did not set forth with specificity the reasons for the extension or dates to justify the extension of time. The motion to dismiss also appears to challenge the Commonwealth's January 22, 1988 motion for an extension of time, and alleges that the Commonwealth did not commence trial by January 22, 1988 and failed to properly move for an extension of time.

On April 22, 1988, the Commonwealth filed a third motion for extension of time for commencing trial, alleging that appellant's motion to dismiss under Rule 1100 and motion to suppress evidence were still outstanding, constituting con-

siderable delay. The April 22 motion requested that the time for commencement of trial be extended to August 5, 1988.

On June 14, 1988, the court entered an order denying appellant's motion to dismiss and addressing the remainder of appellant's pretrial motions which were still outstanding. The trial court found that appellant had been served with the Commonwealth's October 20, 1987 motion to dismiss. Although the copy of the motion which was sent by certified mail to appellant's attorney was misaddressed and thus returned to the Commonwealth marked "Addressee unknown," the court found that the motion was served upon appellant himself, and thus service was proper under Rule 1100(c)(2). The fact that appellant refused delivery of the copy of the motion on three separate occasions does not result in a conclusion that service was defective. We will not overturn the trial court's finding that service was in compliance with Rule 1100(c)(2), as the conclusion was supported by sufficient credible evidence.

We also agree with the trial court that under Rule 1100, service of the motion can be made on either the defendant or defendant's counsel. Rule 1100(c)(2) provides that a copy of the motion for an extension of time "shall be served upon the defendant through his attorney, if any, ..." We agree with the trial court that under *Commonwealth v. Brett*, 262 Pa.Super. 326, 396 A.2d 777 (1978), Rule 1100(c)(2) is satisfied when service is made upon the defendant or the defendant's counsel.

With respect to appellant's arguments regarding the propriety of the court's order granting the extensions, we find that the trial court has adequately and properly addressed and disposed of the merits of appellant's claims, and we affirm the ruling of the trial court on that basis. *See* Trial Court Opinion 1–8. Should there be any doubt as to the correctness of the trial court's decision, we refer appellant to *Commonwealth v. Reeves*, 378 Pa.Super. 29, 548 A.2d 260 (1988), where this Court reiterated the long-

standing principle that the delay caused by a defendant's numerous and complex pretrial motions, such as those filed by appellant in this case, is to be considered delay caused by the unavailability of the defendant, and thus excludable from the computation of the Rule 1100 period. *See also Commonwealth v. Chilcote,* 396 Pa.Super. 106, 578 A.2d 429 (1990) ("time intervening between a defendant's filing of pre-trial motions and the trial court's disposing of such motions is also time which is properly excluded from the computation of the 180–day period under Rule 1100 due to the unavailability of the defendant"); *Commonwealth v. Riffert,* 379 Pa.Super. 1, 549 A.2d 566 (1988), *appeal denied* 522 Pa. 602, 562 A.2d 825 (1989) (defendant was unavailable to be tried until his omnibus pretrial motion was disposed of by the trial court). Here, the period of delay from May 15, 1987, the date on which appellant filed the first of many pretrial requests and motions, until June 14, 1988, the date on which the court disposed of the last of appellant's motions, is attributable to appellant.

At trial, the court permitted Mr. Racowski, the social worker from the Department of Children and Youth Services who interviewed the child, to testify over defense counsel's objection as to statements made by the child during his interview with her. The court also permitted the child's mother and two police officers who interviewed the child to testify regarding statements made by the child. Appellant argues that the admission of all of this hearsay testimony constituted reversible error. We agree.

Before the trial began, appellant's counsel requested a continuing objection to the anticipated hearsay testimony of S.L.'s mother, the social worker and the two police officers. *See* R.R. 79a, 83a–84a. The Commonwealth presented the testimony of these four witnesses before calling the child to the stand. Anticipating that appellant would challenge the content of S.L.'s testimony, that is, that the incidents actually took place, the trial court relied on the case of *Commonwealth v. Willis,* 380 Pa.Super. 555, 552 A.2d 682 (1988), *allocatur denied* 522 Pa. 583, 559 A.2d 527 (1989) and

allowed the hearsay testimony on the basis that the testimony, consisting of prior consistent statements of the child, would be corroborated by the child's testimony.

Appellant argues that portions of the witnesses' testimony were never corroborated by the child. A comparison of S.L.'s testimony with that of the other witnesses shows that the child did not corroborate all of the prior testimony. The effect of the hearsay testimony can best be perceived through a comparison of S.L.'s testimony with the other witnesses' testimony. Although the child testified last at trial, we will review her testimony first to emphasize the degree to which the hearsay testimony supplemented her testimony.

The child stated that appellant had touched her on "my chest area and below the belt." R.R. at 385a. She testified that on one occasion she and her brother were helping appellant clean out his truck. After appellant took her brother away from the truck and put him on the swings, appellant showed her some pictures of naked people and unzipped his pants halfway, at which point S.L. got out of the truck. R.R. at 387a–388a, 398a. S.L. stated that appellant never made her touch him while in the truck. Later on that day, appellant came up to a bedroom in his home where S.L. was watching television and offered her a dollar which the child would not accept. He then told her "not to tell." R.R. at 393a. On another occasion, appellant gave her a dollar which she gave back to him when he told her not to tell. R.R. at 394a.

The child testified to two separate incidents which occurred while she was at her grandparents' home in the bedroom watching television. On one occasion, appellant came into the bedroom and unbuckled the child's pants, grabbed her hand and placed it over his penis. R.R. at 395a. Another time, appellant came into the bedroom, pulled down his pants and placed the child's hand on his penis. R.R. at 389a.

The child told of an incident which occurred in her grandparents' living room in which appellant touched her on her

chest while reaching for his cigarettes. S.L. testified that another time appellant put his hand down her pants. There was no testimony on where or in what context this latter incident occurred. R.R. at 396a–397a.

According to the child, the incidents occurred during the summer of 1985 just before her seventh birthday.

The hearsay testimony of the other witnesses may be summarized as follows. Mother testified that beginning sometime in 1985 and continuing through 1986, S.L.'s attitude toward appellant changed and the child said that she did not want to go over to her grandparents' house if appellant was there. When mother asked the child why she didn't want to go with appellant, S.L. responded, "Grampy bugs me." R.R. 115a. Upon recommendation of a counselor, mother contacted Children and Youth Services in February, 1987.

Mr. Ken Racowski, the caseworker from Children and Youth Services who interviewed the child, testified that S.L. told him of one incident in which her grandfather (appellant) had touched her in her vaginal area, and had placed her hand on his penis. Mr. Racowski stated that the child told him that the act had occurred during the summer in the back of appellant's truck which was parked at her grandmother's house. Mr. Racowski testified that the child told him of another incident in which appellant tried to grab her but she ran into the house. After interviewing the girl, Mr. Racowski referred the case to the Scranton Police Department.

Police Officer Grace Halpin of the Scranton Police Juvenile Division described her interview with S.L. Officer Halpin stated that the child told her that appellant had fondled her in the vaginal and breast area approximately five times and had forced her to touch him in the area of his penis twice. The child also told Officer Halpin that appellant had shown her photos of a nude male and female; with the use of anatomically correct dolls, the girl demonstrated to Officer Halpin that the people in the photographs were engaged in the act of sexual intercourse.

After interviewing the child, the Scranton Police Department realized that the offenses had occurred in Taylor, Pennsylvania rather than in Scranton and therefore the case was transferred to the jurisdiction of the Taylor Police Department. Because the child was more comfortable talking to the female police officer, Officer Halpin was asked to come to the Taylor Police Department to interview the child again in the presence of Officer Robert Zaloga of the Taylor Police Department.

Officer Zaloga recounted two interviews he had with S.L. The initial interview was taken in the presence of the child and mother. Officer Zaloga stated that the child told him of four specific incidents which occurred between appellant and her during the summer months of 1985. The child told Officer Zaloga that during the first incident, she was helping appellant clean out his truck when appellant showed her some "nasty" pictures. R.R. at 338a. She told Officer Zaloga that after her grandfather showed her the picture, he touched her in the breast area and the vaginal area and then took her hand and placed it in the area of his penis. The second incident which the child recounted to Officer Zaloga occurred two weeks later at the home of her grandparents. The child stated that she was up in her grandparents' bedroom lying on the bed watching television when appellant came in, laid down on the bed next to her, slid his hand up under her shirt and then down across her genital area, and then grabbed her hand and put it down the front of his pants. She told Officer Zaloga that she slapped appellant and ran downstairs. The third incident which the child told Officer Zaloga about occurred in the truck located outside the grandparents' home. Appellant again touched her breast and genital area and placed her hand on his genital area. The fourth incident which the child related to Officer Zaloga occurred in appellant's residence when appellant pulled down his pants, exposed himself to the child and made her hold his penis, and then grabbed her breast and genital areas.

At the second interview, Officer Halpin was present along with Officer Zaloga. Officer Zaloga testified that the child gave the same testimony that she had given at the first interview.

The hearsay statements of the child, as recounted by the officers, provided a much more lucid, detailed and complete account of the incidents than the child's trial testimony which may fairly be characterized as confused and disjointed. Portions of the officers' testimony were never even corroborated by S.L. For example, the caseworker and one of the police officers testified that S.L. told them that appellant had forced her to touch him while in the truck, whereas S.L. testified that appellant never made her touch him while they were in his truck.

Appellant was charged with four counts of corruption of minors, four counts of indecent assault, two counts of indecent exposure, and two counts of open lewdness. After the Commonwealth rested its case, appellant demurred to all of the charges, in part because the victim's testimony did not match the testimony of the other witnesses and the victim's testimony standing alone did not substantiate any of the charges alleged in the information. The trial court dismissed two of the charges, finding the evidence insufficient on a charge of corruption of a minor and a charge of indecent assault. The jury convicted appellant of three counts of corruption of minors, one count of indecent exposure, two counts of indecent assault, and one count of open lewdness.

On cross-examination, defense counsel questioned S.L. as to whether her memory was better when she told Officers Halpin and Zaloga and Ken Racowski about the incidents than her memory was at the time of trial, which was held more than a year after the incidents had been reported. S.L. indicated that her memory was better eighteen months earlier when she had told the police of the incidents. When asked by defense counsel if her statements were more truthful when she told the police about the incidents, S.L. responded "No. This is all true. I wouldn't make up a lie

like this." R.R. 408a. Defense counsel cross-examined S.L. as to the year in which the incidents occurred and when S.L. had first told anyone of the incidents. Defense counsel also brought out the fact that appellant and S.L.'s grandmother were going through a divorce, presumably to raise the inference that S.L. was biased against appellant.

Hearsay evidence is commonly defined as an out-of-court assertion which is offered to prove the truth of the matter asserted. *Commonwealth v. Thomas*, 372 Pa.Super. 349, 356, 539 A.2d 829, 833 (1988), *appeal denied* 520 Pa. 604, 553 A.2d 967 (1988).

> When a statement is offered in evidence to prove the truth of a fact asserted therein, the speaker's credit and the circumstances of the utterance become basic to a proper evaluation of the statement. Therefore, the hearsay rule generally excludes such evidence unless the speaker is on hand to personally testify.

*Thomas, supra* 372 Pa.Super. at 356, 539 A.2d at 833, *quoting Commonwealth v. DiSilvio*, 232 Pa.Super. 386, 391, 335 A.2d 785, 787–88 (1975).

■ In ruling that the statements made by S.L. to the police officers and social worker were admissible, the court relied upon the "prior consistent statement" exception to the hearsay rule. In certain circumstances, a prior declaration of a witness is admissible to corroborate the witness' testimony where the witness' credibility has been attacked. *Commonwealth v. Hutchinson*, 521 Pa. 482, 556 A.2d 370 (1989).

> Because such statements are hearsay, their use as a means to rehabilitate the credibility of an impeached witness' testimony is severely limited; and such statements are admissible only if it is alleged that the witness' present testimony is recently fabricated or a result of corrupt motives.... Furthermore, evidence of such statements is "admissible only in rebuttal and then only for the purpose of showing that that which the witness now testifies to has not been recently fabricated".... As a further restriction upon admissibility the statement

must have been made at a time "before its ultimate effect on the *question trying* could have been foreseen". . . . In more recent times this court has interpreted this caveat to mean before "any corrupt motive has arisen". . . .

If one testifies that they did a certain thing at a given time, they may be challenged that they said something different before. Such is impeachment by a prior contradictory statement. Ordinarily, that one has always said the same thing is subsumed in their testimony and need not be buttressed by evidence of prior consistency, unless that consistency, by allegation of recent fabrication is challenged. When challenged, evidence of prior and continued consistency may be offered. Evidence of prior consistency, absent such challenge is not required and is essentially cumulative and repetitious. To regularly allow testimony of prior consistency may easily become a device to merely augment the credibility of witnesses by others.

*Id.*, 521 Pa. at 487–88, 556 A.2d at 372 (citations omitted). *See also Commonwealth v. Smith*, 518 Pa. 15, 540 A.2d 246, 258 (1988) ("prior consistent statements of a witness are admissible to rebut a defense suggestion of corrupt motives or recent fabrication"); *Commonwealth v. Griffin*, 511 Pa. 553, 568–69, 515 A.2d 865, 872 (1986), *cert. denied Griffin v. Pennsylvania*, 480 U.S. 940, 107 S.Ct. 1590, 94 L.Ed.2d 779 (1987) ("prior consonant statements, while not admissible to buttress or corroborate a witness' in-court testimony, are admissible to rehabilitate that witness' credibility and to rebut accusations or suggestions of fabrication or of corrupt motives"). The supreme court has held that the trial court may, in its discretion, allow the Commonwealth to introduce the prior consistent statements to rebut a charge of corrupt motives in anticipation of the defense, before the witness has actually been impeached on cross-examination. *Commonwealth v. Smith, supra*, 518 Pa. at 40, 540 A.2d at 258.

Having carefully reviewed the "prior consistent statement" exception to the hearsay rule as defined by our

supreme court, we must conclude that the testimony of the police officers went beyond the permissible "rehabilitative" goal of the exception. The officers' testimony included detailed accounts of the incidents which were never supplied by S.L. herself, thereby greatly augmenting S.L.'s testimony. We hold that the out-of-court statements do not fall within the prior consistent statements exception to the hearsay rule.

The Commonwealth also relies on caselaw which holds that prior statements are admissible when the declarant is present in court and available for cross-examination. *Commonwealth v. Fanelli*, 377 Pa.Super. 555, 547 A.2d 1201 (1988) (en banc), *allocatur denied* 523 Pa. 641, 565 A.2d 1165 (1989).[2] We have found two cases dealing with the admissibility of out-of-court statements made by minor victims of sexual abuse under circumstances similar to those presented by the facts of this case.

In *Commonwealth v. Haber*, 351 Pa.Super. 79, 505 A.2d 273 (1986), this Court held that the admission of statements made by two child victims of sexual abuse violated the hearsay rule. In *Haber*, two mothers related stories of sexual abuse told to them by their children, including details of the physical acts and the identity of the molester. The children were four and one-half and five years old at the time of the abuse. At trial, the children were unable to remember details about what had happened and their testimony consisted of monosyllabic responses to leading questions. The five year old child was not permitted to testify as to the identity of her assailant. For these reasons, the Court held that the testimony of the children's mothers

---

**2.** We have found no supreme court cases which support the admissibility of hearsay statements as substantive evidence where the declarant is in court and available for cross-examination. We note that this rule, assuming its validity, would obviate the need for many of the hearsay exceptions, including the prior consistent statement exception discussed *supra*. For example, if out-of-court statements are admissible in any case in which the declarant testifies and is cross-examined at trial, the "prior consistent statement" exception to the hearsay rule, which holds that prior declarations of a witness whose credibility has been impeached are admissible for the limited purpose of rehabilitating the witness, would be unnecessary.

recounting their interviews with the children was inadmissible hearsay. *Id.*, 351 Pa.Superior Ct. at 81, 505 A.2d at 274. On the other hand, in the recent case of *Commonwealth v. Rakes*, 398 Pa.Super. 440, 581 A.2d 212 (1990), this Court held that testimony of a counselor and psychologist relating that the victim had told them that appellant had molested her from the time she was eight or nine years old was properly admitted at trial. The victim was fourteen when she told the psychologist and counselor of the sexual abuse, and fifteen years old at the time of trial. At trial, the victim testified first and related in explicit detail the numerous assaults committed on her by the defendant. *Id.*, 398 Pa.Superior Ct. at 442, 581 A.2d at 214. The victim's testimony was followed by the testimony of the counselor and the psychologist who testified that the victim had related the same account of events to them. The Court noted that the victim was present at trial and available for cross-examination. *Id.*, 398 Pa.Superior Ct. at 446, 581 A.2d at 216. In concluding that the victim's prior statements were admissible, the *Rakes* Court distinguished *Haber:*

> Here, unlike *Haber*, the victim is fifteen years old, was available at trial for full cross-examination, and the case against appellant was fully established through the victim's testimony. The out-of-court testimony here did not include details concerning elements of the offense that the victim herself was unable to provide. Thus, *Haber* does not require reversal in this case.

*Rakes, supra,* 398 Pa.Superior Ct. at 448, 581 A.2d at 217.

Having carefully reviewed the trial transcript and compared the facts of this case with those of *Haber* and *Rakes*, we must conclude the trial court erred in admitting the testimony of the police officers. In this case, the victim was seven years old when the incidents occurred, was eight and one-half when she reported the incidents to the police, and was ten years old at the time of trial. As in *Rakes*, the victim here was available for full cross-examination at trial.[3]

**3.** In *Haber*, the trial court permitted one of the child victims to testify as to all matters, and permitted the other child to testify as to the

However, unlike *Rakes*, the Commonwealth's case here was not fully established through S.L.'s testimony at trial. A comparison of the officers' testimony with S.L.'s testimony shows that the officers' testimony was crucial to the Commonwealth's case, as the testimony of these witnesses supplied many missing details regarding the time, place and frequency of the events and elements of the offenses which S.L. failed to provide at trial. In this regard, the instant case is more similar to *Haber*. We hold that the trial court erred in admitting S.L.'s out-of-court statements. Although the trial court gave a cautionary instruction to the jury to disregard any testimony that was not corroborated by S.L., we find that the instruction could not have cured the harmful effect of all of the hearsay testimony, given the extent to which the out-of-court statements buttressed S.L.'s in-court testimony.

As appellant's conviction was based on evidence which was inadmissible under the evidentiary rules on hearsay testimony in effect at the time of his trial, we reverse the judgment of sentence and remand the case for a new trial. On remand, we direct the attention of the trial court and the parties to a recent amendment to the Pennsylvania statutes dealing with the admissibility of out-of-court statements by children:

### § 5985.1. Admissibility of certain statements

**(a) General rule.**—An out-of-court statement made by a child victim or witness, who at the time the statement was made was 12 years of age or younger, describing indecent contact, sexual intercourse or deviate sexual intercourse performed with or on the child by another, not otherwise admissible by statute or rule of evidence, is admissible in evidence in any criminal proceeding if:

(1) The court finds, in an in camera hearing, that the evidence is relevant and that the time, content and circumstances of the statement provide sufficient indicia of reliability.

molestation itself, but not as to the identity of her molester. *Haber, supra* 351 Pa.Super. at 81, 505 A.2d at 274.

(2) The child either:

(i) testifies at the proceeding; or

(ii) is unavailable as a witness and there is corroborative evidence of the act.

**(b) Notice required.**—A statement otherwise admissible under subsection (a) shall not be received into evidence unless the proponent of the statement notifies the adverse party of the proponent's intention to offer the statement and the particulars of the statement sufficiently in advance of the proceeding at which the proponent intends to offer the statement into evidence to provide the adverse party with a fair opportunity to prepare to meet the statement.

42 Pa.C.S.A. § 5985.1 (Purdon 1989). As this new rule of evidence became effective February 20, 1990, § 5985.1 would apply to appellant's new trial.

For the foregoing reasons, we reverse the judgment of sentence and remand this case for further proceedings consistent with this decision. As our disposition of the issue regarding the admissibility of S.L.'s out-of-court statements requires reversal, we need not address appellant's remaining arguments.

Reversed and remanded.

OLSZEWSKI, J., dissents.

OLSZEWSKI, Judge, dissenting:

While I agree with the majority's disposition of appellant's challenge to the trial court's failure to dismiss on the basis of an alleged Pa.R.Crim.P. 1100 violation, I must dissent with the treatment accorded the admissibility of the testimony of the four witnesses.

I agree that the testimony would not be admissible as prior consistent statements made by the child, for the reason that the child's testimony given at trial did not fully corroborate the testimony given by the four witnesses. It is well-settled that prior consistent statements of a witness

are admissible to rebut a defense suggestion of corrupt motives or recent fabrication and to rehabilitate the witness's credibility. *See Commonwealth v. Griffin,* 511 Pa. 553, 568–569, 515 A.2d 865, 872 (1986), *cert. denied Griffin v. Pennsylvania,* 480 U.S. 940, 107 S.Ct. 1590, 94 L.Ed.2d 779 (1987); *Commonwealth v. Smith,* 518 Pa. 15, 40, 540 A.2d 246, 258 (1988). In the present case, I am in agreement with the majority that the testimony of the four witnesses in question exceeded the scope of the child's testimony and, therefore, was not only rehabilitative, but supplemental to the child's testimony.

I do not agree, however, that the testimony should have been excluded from the evidence. The record indicates that the jury was instructed to disregard any testimony that was not corroborated by the child-victim as follows:

Members of the jury, some witnesses testified as to things told to them by [S.L.]. This testimony was given prior to the child testifying in this trial. That testimony given by the witnesses that was not corroborated by [S.L.] is to be ignored by you and is not to be used in any way as the basis for a finding of guilt by you. You may only use that testimony of the witnesses, which you believe, and which was corroborated by [S.L.]'s testimony that you believe.

(Trial transcript at 130.)

Contrary to the majority, I believe that this jury instruction effectively cured any harmful effect of the supplemental testimony given by the four witnesses. I would, therefore, not reverse on this ground. Even if reversal were proper on this ground, on remand, the trial court would be required to apply a recent legislative enactment, which would arguably render the testimony in question admissible. 42 Pa.C.S.A. § 5985.1 (Purdon 1989), which went into effect on February 20, 1990, and would apply to appellant's new trial, provides:

§ 5985.1 Admissibility of certain statements

(a) General rule—An out-of-court statement made by a child victim or witness, who at the time the statement

was made was 12 years of age or younger, describing indecent contact, sexual intercourse or deviate sexual intercourse performed with or on the child by another, not otherwise admissible by statute or rule of evidence, is admissible in evidence in any criminal proceeding if:

(1) The court finds, in an in camera hearing, that the evidence is relevant and that the time, content and circumstances of the statement provide sufficient indicia of reliability.

(2) The child either:

(i) testifies at the proceeding; or

(ii) is unavailable as a witness and there is corroborative evidence of the act.

**(b) Notice required**—A statement otherwise admissible under subsection (a) shall not be received into evidence unless the proponent of the statement notifies the adverse party of the proponent's intention to offer the statement and the particulars of the statement sufficiently in advance of the proceeding at which the proponent intends to offer the statement into evidence to provide the adverse party with a fair opportunity to prepare to meet the statement.

In the instant case, it would be futile to remand for a new trial, as the majority has decided, only to have the testimony admitted under the above statute. In the interests of judicial economy, I believe the testimony was properly admitted into evidence. Additionally, any prejudice that the defendant may have endured by the admission of the testimony was cured by the cautionary instructions given to the jury. Therefore, I respectfully dissent with the analysis of the majority on this issue.